In the Matter of a Member of the Bar of the Supreme Court of Delaware William L. GARRETT, Jr., Respondent.

No. 456, 2003.

Supreme Court of Delaware.

Submitted: Oct. 8, 2003.
Decided: Oct. 23, 2003.

Michael S. McGinniss, Wilmington, for Office of Disciplinary Counsel.

William L. Garrett, Jr., pro se.

Before VEASEY, Chief Justice, HOLLAND and BERGER, Justices.

PER CURIAM:

This matter involves a petition for discipline against the Respondent, William L. Garrett, Jr., Esquire. Garrett is a member of the Bar of the Supreme Court of Delaware. He was admitted to the Bar of this Court in 1980. At all times relevant to the petition for discipline, Garrett was engaged in the private practice of law as a solo practitioner in the State of Delaware, with an office located in Wilmington, Delaware.

### The Board's Report

A panel of the Board on Professional Responsibility (the "Board") issued a report dated September 15, 2003, which is attached to this Opinion as Exhibit A. In that report, the Board concluded that clear and convincing evidence had been presented by the Office of Disciplinary Counsel ("ODC") to establish nine separate violations of the Delaware Lawyers' Rules of Professional Conduct (the "Rules") by Garrett. According to the Board's report, the violations committed by Garrett fall into three general categories of duties owed by a Delaware lawyer under the Rules.

(1) Failure to Preserve the Client's Property by:

(a) Depositing unearned advance fees into his operating account, and thereby commingling client funds with his own funds, in violation of Rule 1.5(f) and Rule 1.15(a); and

(b) Failing properly to maintain his law practice books and records for his general escrow account, real estate escrow account, and operating account, from January 1994 through December 2002, in violation of Rule 1.15(d) and former Interpretive Guideline No. 2.

(2) Failure to Maintain Personal Integrity by:

Willfully failing to pay any federal, state, or local income taxes from 1994 through 2001, in violation of Rule 8.4(b), Rule 8.4(d) and its Interpretive Guideline; and

(3) Violating Duties Owed as a Professional by:

(a) Filing Certificates of Compliance with the Delaware Supreme Court each year from 1996 through 2002, in violation of Rule 8.4(c); and

(b) Falsely stating that he was complying with various lawyer record-keeping requirements and filing and paying federal, state and local income tax obligations on a timely basis, in violation of Rule 8.4(c) and (d) and its Interpretive Guideline.

As a result of those violations, the Board recommended that Garrett be suspended from the practice of law for three years.

### *Exclusive Disciplinary Authority*

The Board's report was filed with this Court. Garrett filed no objections to the Board's report. The Office of Disciplinary Counsel advised the Court by letter that it had no objections to the Board's report.

 The exclusive authority to impose sanctions for attorney misconduct is vested in this Court.[1] The guidelines for the imposition of sanctions are well-established. They are not designed to be either punitive or penal.[2] The relevant factors to be considered in determining an appropriate sanction are: a) the nature of the duty violated; b) the lawyer's mental state; c) the actual/potential injury caused by the misconduct; and d) the existence of aggravating and mitigating circumstances.[3]

### *Appropriate Sanction*

 The Court has considered this matter carefully. We accept the Board's findings of fact. The record reflects a pattern of knowing misconduct by Garrett over a period of several years, resulting in nine separate violations of the Delaware Lawyers' Rules of Professional Conduct. We have concluded that the Board's recommendation of a three-year suspension from the practice of law is the appropriate sanction and consistent with this Court's prior holdings in similar cases.[4]

1. *In re Shearin*, 721 A.2d 157, 165 (Del.1998) (per curiam), *cert. denied*, 526 U.S. 1122, 119 S.Ct. 1776, 143 L.Ed.2d 805 (1999).

2. *Id.* at 166.

3. *In re Mekler*, 669 A.2d 655, 668 (Del.1995). The Court has also looked for guidance to the *ABA Standards for Imposing Lawyer Sanctions. In re Shearin*, 721 A.2d at 165–66.

4. *In re Sanders*, 498 A.2d 148 (Del.1985) (three-year suspension); *Matter of Sandbach*, 546 A.2d 345 (Del.1988) (three-year suspension, reducible to two years upon completion of 400 hours community service); *In re Ayres*, 802 A.2d 266 (Del.2002) (three-year suspension); *In re Autman*, 2002 WL 1227213 (Del. June 3, 2002) (three-year suspension); *In re Hiner*, 2002 WL 923162 (Del. May 2, 2002) (three-year suspension).

### *Conclusion*

Now, therefore, it is ordered that:

(i) Garrett shall be suspended from the practice of law for a period of three years beginning October 29, 2003 and ending upon his reinstatement, for which application may be made on or after October 28, 2006.

(ii) During the period of suspension, Garrett shall conduct no act directly or indirectly constituting the practice of law, including the sharing or receipt of any legal fees. Garrett also shall be prohibited from having any contact with clients or prospective clients or witnesses or prospective witnesses when acting as a paralegal, legal assistant, or law clerk under the supervision of a member of the Delaware Bar.

(iii) As soon as possible, the ODC shall file a petition in the Court of Chancery for the appointment of a Receiver for Garrett's law practice.

(iv) Garrett shall assist the Receiver in following the directives of Rules 21 and 23 of the Delaware Lawyers' Rules of Disciplinary Procedure.

(v) The Receiver shall make such arrangements as may be necessary to protect the interests of any of Garrett's clients.

(vi) Garrett shall pay the costs of these disciplinary proceedings.

(vii) The ODC shall disseminate this Opinion in accordance with Rule 14 of the Delaware Lawyers' Rules of Disciplinary Procedure.

(viii) The mandate shall issue immediately.

EXHIBIT A

**BOARD ON PROFESSIONAL RESPONSIBILITY**
**OF THE**
**SUPREME COURT OF THE STATE OF DELAWARE**

DEL AWARE SUPREME COURT
FILED

' 2003 SEP 15 P 1: 28

DEPUTY CLERK

R E C E I V E D

SEP 15 2003

BOARD ON PROFESSIONAL
RESPONSIBILITY

In the Matter of )
Member of the Bar of )
the Supreme Court of )
Delaware: )
)
WILLIAM L. GARRETT, JR., )
Respondent. )

**CONFIDENTIAL**

Board Case No. 32, 2002

## *REPORT OF THE BOARD ON PRO-FESSIONAL RESPONSIBILITY*

The Panel of the Board on Professional Responsibility appointed to hear this matter consisted of Mr. James M. Keegan, Robert G. Gibbs, Esquire, and Clay T. Jester, Esquire (Chair). A hearing was held in the Supreme Court courtroom in Wilmington, Delaware at 9:30 a.m. on Wednesday, April 16, 2003. The Office of Disciplinary Counsel ("ODC") was represented by Michael S. McGinniss, Esquire.

Respondent, William L. Garrett, Jr., Esquire, appeared pro se.

### *BACKGROUND*

The Petition for Discipline filed by ODC in this matter alleged the following facts:

1. The Respondent is a member of the Bar of the Supreme Court of Delaware. He was admitted to the Bar in 1980. At all times relevant to this Petition for Discipline, the Respondent was engaged in the private practice of law as a solo practition-

er in the State of Delaware, with an office located in Wilmington, Delaware.

2. Delaware lawyers are obligated to file an annual registration statement with the Supreme Court of Delaware (the "Court"). Said registration statement includes a Certificate of Compliance, by which the lawyer certifies to the Court that the lawyer is properly maintaining books and records in compliance with the specific requirements of the Rules and is timely filing and paying taxes. The Court expects that lawyers completing the Certificate of Compliance will undertake the appropriate review and inquiry into matters involving their law practice books and records and their tax obligations, so as to enable them accurately to answer all of the items identified on the Certificate.

3. Martin Zukoff, CPA, an Auditor for the Lawyers' Fund for Client Protection ("LFCP"), provided the ODC with a Report, dated August 28, 2002 (the "Zukoff Report"), concerning his efforts to schedule and conduct a random compliance audit of the Respondent's law Practice books and records. The Zukoff Report reflects that between February 26, 2002 and July 30, 2002, the LFCP sent the Respondent written notice of audit dates on three occasions (i.e., for March 14, 2002; June 27, 2002; and July 30, 2002), each of which resulted in the Respondent contacting Zukoff with a request for re-scheduling.

4. In a letter dated July 24, 2002, the Respondent specified dates on which he would be available for the random compliance audit. The LFCP mailed a letter to the Respondent on August 20, 2002, notifying the Respondent to be prepared for a compliance audit at 9:00 a.m. on one of the available dates he specified in his letter (i.e., August 28, 2002). On the morning of August 27, 2002, Mr. Zukoff left a telephone answering machine message for the

Respondent requesting that the Respondent call him to confirm the appointment for the next morning. The Respondent called Mr. Zukoff at or about 12:30 p.m. on August 27, expressing surprise about the audit because, he said, he had not received the letter notifying him of the August 28 audit. (Zukoff had received his copy of the LFCP letter on August 21, 2002.) The Respondent informed Mr. Zukoff that he would be unable to have him come to his office because he had already set up some appointments. Mr. Zukoff informed the Respondent that the audit could not be re-scheduled for the fifth time and that he would be reported to the LFCP and the ODC for intentionally delaying the compliance audit. The Respondent then responded that he would "see what he could do" and call Mr. Zukoff "back at 4:00 p.m." Having not heard from the Respondent, Mr. Zukoff called the Respondent at or about 4:30 p.m., leaving an answering machine message conveying the urgency of the matter. As of 10:00 a.m. on August 28, Mr. Zukoff had not heard from the Respondent in response to that message. Mr. Zukoff prepared and sent a report of these problems to the LFCP, which forwarded the report to the ODC. By the afternoon of August 28, the Respondent had sent a letter to Mr. Zukoff, via facsimile, stating that he had been at his office that morning to meet with Mr. Zukoff, and apologized for any confusion involved in the matter. He offered September 5 or 6 or the week of September 9 as available dates.

5. After receiving the Zukoff Report, the ODC requested that Joseph F. McCullough, an Auditor for the Lawyers' Fund for Client Protection ("LFCP"), conduct an investigative audit of the Respondent's financial books and records. Mr. McCullough visited the Respondent's law office on September 5, 2002. The Respondent

was present for the duration of the visit, and discussed with Mr. McCullough matters relating to his law practice books and records.

6. At the September 5th audit, the Respondent provided Mr. McCullough with the following information. The Respondent had been using a software program, Quicken Deluxe, to record his business transactions. Since the inception of his solo law practice in 1994, he had not prepared any monthly or yearly bank reconciliations for his three business bank accounts, which consisted of a general escrow account, an attorney account (i.e., operating account), and a real estate escrow account, all at Citizens Bank (formerly Mellon Bank). There were no reconciliations of the client escrow funds or any listing of sub-client ledger balances for either the general escrow account or the real estate escrow account. Further, he had not prepared any cash receipt journals for the law practice. The Respondent had a cash disbursement journal, but there were no monthly balances or year end balances. He maintained the general escrow account for personal injury and settlement cases. The real estate escrow account was used for real estate work, averaging about 10 settlements per year. The Respondent used the operating account for deposits of earned fees as well as retainers (i.e., advance fees). The Respondent estimated that he received approximately 10 to 15 retainer fees each year, which were deposited into the operating account. There were no separate listings of client funds to review for accuracy. There were also negative balances in the operating account during June and July 2002.

7. Upon questioning by Mr. McCullough, the Respondent indicated that he had not filed any federal, state or local income tax returns for the past few years. The Respondent stated that he would have to check his records to determine the last time that he prepared and filed a tax return. He estimated that the law firm's net profit was in the neighborhood of $100,000 per year, and acknowledged that he would have a tax liability due and owing for each year. He indicated that he had not made any estimated tax payments during this entire period of time. He also indicated that he did not have any employees for his law practice, and was not required to file quarterly employment tax returns.

8. Mr. McCullough showed the Respondent copies of the Certificates of Compliance which the Respondent had filed with the Delaware Supreme Court in 1996 through 2002. These Certificates of Compliance all represented to the Court that he was complying with financial record keeping requirements and filing and paying his income taxes in a timely manner. Copies of the Respondent's Certificates of Compliance for 1996 through 2002 are attached hereto as Exhibit 3 and incorporated herein. (The LFCP does not have a copy of the Respondent's Certificate of Compliance for 1995) The Respondent acknowledged that the Certificates were not accurate, and stated that he was at a "loss for words" to explain why he failed to answer the items truthfully each year. He agreed to forward a letter to the ODC as soon as possible outlining what steps he would be taking to correct the many deficiencies noted at the audit.

9. The deficiencies noted in Mr. McCullough's February 10, 2003 audit report with regard to the Respondent's law office books and records and tax non-compliance, reflect that:

(a) in the 1996 Certificate of Compliance, the Respondent answered "YES" when it would have been correct to answer

"NO" to items 2, 3, 4, 5(b), 5(c), 5(e), 6, and 7;

(b) in the 1997 Certificate of Compliance, the Respondent answered "YES" when it would have been correct to answer "NO" to items 2, 3, 4, 5(b), 5(c), 5(e), 6, and 7;

(c) in the 1998 Certificate of Compliance, the Respondent answered "YES" when it would have been correct to answer "NO" to items 3, 4, 5, 6(b), 6(c), 6(d), 6(e), 6(h), 7, and 8, and answered "N/ A" when it would have been correct to answer "NO" to item 6(f);

(d) in the 1999 Certificate of Compliance, the Respondent answered "YES" when it would have been correct to answer "NO" to items 3, 4, 5, 6(b), 6(c), 6(d), 6(e), 6(h), 7, and 8, and answered "N/A" when it would have been correct to answer "NO" to item 6(f);

(e) in the 2000 Certificate of Compliance, the Respondent answered "YES" when it would have been correct to answer "NO" to items 3, 4, 5, 6(b), 6(c), 6(d), 6(e), 6(h), 7, and 8 and answered "N/ A" when it would have been correct to answer "NO" to item 6(f);

(f) in the 2001 Certificate of Compliance, the Respondent answered "YES" when it would have been correct to answer "NO" to items 3, 4, 5, 6(b), 6(c), 6(d), 6(e), 6(h), 7, and 8 and answered "N/ A" when it would have been correct to answer "NO" to item 6(f);

(g) in the 2002 Certificate of Compliance, the Respondent answered "YES" when it would have been correct to answer "NO" to items 3,4, 5, 6(b), 6(c), 6(d), 6(e), 6(h), 7, 8(b) 8(c), and 9, and answered "N/A" when it would have been correct to answer "NO" to item 6(f),

10. The Respondent forwarded a letter dated September 10, 2002 to the ODC, acknowledging that he would be attempting to remedy the bookkeeping deficiencies as identified by Mr. McCullough, and would be doing the work himself. On September 19, 2002, the ODC forwarded a letter to the Respondent, requesting a detailed response to additional questions about his record keeping deficiencies and non-filing of federal, state and local tax returns.

11. On October 10, 2002, the Respondent forwarded a letter to the ODC responding to the ODC's questions. The Respondent stated that he had not filed federal, state or local income tax returns since opening his law firm in 1994. The Respondent also admitted that he did not respond accurately to the items on his Certificates of Compliance. A copy of the Respondent's letter dated October 10, 2002 is attached hereto as Exhibit 4 and incorporated herein.

12. In early October 2002, the Respondent informed Mr. McCullough that he would be meeting with an accountant on November 13, 2002 in an attempt to prepare his delinquent tax returns (1994 to present). On November 19,2002, Mr. McCullough telephoned the Respondent, in an attempt to determine what steps he had taken since the initial audit on September 5, 2002. The Respondent informed Mr. McCullough that he had not met with his accountant, but was planning to talk with Mitchell Smith, CPA on November 20,- 2002. The Respondent was not able to provide information as to whether he had been able to compile any tax figures to give the accountant. On November 21, 2002, Mr. McCullough spoke again with the Respondent regarding what information he provided to his accountant for the preparation and filing of the delinquent tax returns. The Respondent admitted to Mr.

McCullough that he had not provided any tax figures to the accountant, nor was he in any position to prepare or file the tax returns.

13. On November 21, 2002, the ODC sent the Respondent another letter, advising him that it had been almost three months since the September 5, 2002 audit, and no real progress had been made in filing the delinquent tax returns. A follow-up audit was requested for December 13, 2002, to determine what action had been taken to correct the bookkeeping deficiencies and what steps had been taken to file delinquent tax returns.

14. On December 13, 2002, Mr. McCullough visited the Respondent's law office to conduct the follow-up audit. Mr. McCullough found that no real progress had been made with regard to the filing of the delinquent tax returns, and the Respondent informed Mr. McCullough that, to date, the accountant had not been provided with tax figures in order to prepare the returns. Mr. McCullough also found that there had been no effort to reconcile any of the Respondent's three business bank accounts (i.e., general escrow, real estate escrow, or operating accounts), and no significant attempts to correct the deficiencies. The Respondent had not acquired the software program, QuickBooks, for use in the reconciliation of his bank accounts, as his October 10 letter to the ODC had indicated he was going to do.

15. On December 17, 2002, a meeting was held at the ODC involving the Respondent, Mr. McCullough, and the undersigned Disciplinary Counsel. The Respondent was informed that no progress had been made to resolve his law practice accounting and tax deficiencies, despite the fact that he had been on notice of the LFCP audit process since early 2002. He was also informed that, in the latter part of January 2003, the ODC intended to notify the federal and state tax authorities of the Respondent's non-filing of tax returns. In response, the Respondent acknowledged his continuing non-compliance problems, stated that he was aware of the seriousness of the matter, and indicated that he would be giving his accountant tax information to complete three or four years of returns by the end of December 2002. He also indicated that, sometime in January 2003, he would attempt to have the remaining tax figures available to his accountant for preparation. The Respondent further noted that he would acquire QuickBooks software to start the bank account reconciliations, and would be notifying Mr. McCullough of his progress in getting his delinquent tax returns prepared and filed with the tax authorities.

16. During the latter part of January 2003, numerous telephone calls were made to the Respondent's law office in an attempt to determine the status of the various deficiencies. (On two occasions, the Respondent left return messages for Mr. McCullough, without detail as to progress on the accounting and tax matters.) Mr. McCullough's last telephone messages to the Respondent were on January 24 and 27, 2003. As of the date of Mr. McCullough's February 10 audit report, the Respondent had not returned those telephone messages or notified Mr. McCullough or the ODC as to what progress had been made in addressing his delinquent tax returns and record keeping deficiencies.

17. On January 30, 2003, the ODC forwarded letters to the federal and state authorities, notifying them of the Respondent's non-filing of tax returns for the period 1994 to present.

In the Petition for Discipline ODC alleged the following violations of the Delaware Lawyers' Rules of Professional Conduct (the "Rules"):

## COUNT ONE: FAILURE TO COMPLY WITH REQUIREMENTS FOR THE HANDLING OF ADVANCE FEES

18. Effective January 1, 1999, Rule 1.5(f) states that a lawyer "may require the client to pay some or all of the fee in advance of the lawyer undertaking the representation, provided that: (1) the lawyer shall provide the client with a written statement that the fee is refundable if It is not earned, (2) the written statement shall state the basis under which the fees shall be considered to have been earned, whether in whole or in part, and (3) all unearned fees shall be retained in the lawyer's trust account, with statement of the fees earned provided to the client at the time such funds are withdrawn from the trust account."

19. By depositing unearned advance fees received after January 1, 1999 into his operating account, rather than the general escrow account, the Respondent violated Rule 1.5(f).

## COUNT TWO: FAILURE TO HOLD CLIENT PROPERTY SEPARATE FROM THE LAWYER'S PROPERTY

20. Rule 1.15(a) requires, in pertinent part, that a lawyer "shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property," and that property of clients or third persons must be appropriately safeguarded.

21. By depositing unearned advance fees into his operating account from 1994 through September 2002, the Respondent commingled client funds with his own funds in violation of Rule 1.15(a)

## COUNT THREE: FAILURE TO MAINTAIN BOOKS AND RECORDS

22. Rule 1.15(d) sets forth detailed and specific requirements for the maintenance of attorneys' books and records and handling of practice-related funds.

23. Prior to January 1, 1999, Rule 1.15(d) required that "a lawyer shall adhere to the provisions of Interpretive Guideline No. 2," which set forth detailed and specific requirements for the maintenance of attorneys' books and records and handling of practice-related funds.

24. As set forth in this Petition and the McCullough Report, the Respondent failed properly to maintain his law practice books and records for his general escrow account, real estate escrow account, and operating account from January 1994 through December 2002. Specifically, the Respondent (1) used his operating account for funds (i.e., client retainers) that should have been held in a fiduciary capacity; (2) failed to maintain cash receipts journals, and to total and balance cash receipts and disbursement journals on a monthly basis; (3) failed to reconcile the check register balance for each bank account to the bank statement balance on a monthly basis (4) for the general escrow and real estate escrow accounts, failed to prepare monthly listings of client and third party balances showing the name and balance of each client or third party, and the total of all balances; and (5) for the general escrow and real estate escrow accounts, failed to reconcile a total cash balance so as to agree with a total of client and third party balance listing.

By engaging in this conduct, the Respondent violated Rule 1.15(d) and former Interpretive Guideline No. 2.

COUNT FOUR: CRIMINAL CONDUCT REFLECTING ADVERSELY ON A LAWYER'S HONESTY, TRUSTWORTHINESS, OR FITNESS AS A LAWYER IN OTHER RESPECTS.

25. Rule 8.4(b) states that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."

26. The Interpretive Guideline to Rule 8.4 states that "criminal acts that reflect adversely on a lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, as construed in these Rules, shall be deemed to include, but not limited to, the following: (1) willful failure to make and file federal, state, or city income tax returns or estimated income tax returns, or to pay such estimated tax or taxes, or to supply information in connection therewith at the time or times required by law or regulation; (2) willful attempt in any manner to evade any federal, state, or city income tax."

27. By willfully failing to file any federal, state or local income tax returns for tax years 1994 through 2001, and willfully failing to pay any federal, state or local taxes on his income for tax years 1994 through 2001, the Respondent violated Rule 8.4(b) as construed by the Interpretive Guideline.

COUNT FIVE: CONDUCT THAT IS PREJUDICIAL TO THE ADMINISTRATION OF JUSTICE

28. Rule 8.4(d) provides that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice."

29. By failing to file any federal, state or local personal income tax returns for tax years 1994 through 2001, or to pay any federal, state or local taxes on his income for tax years 1994 through 2001, the Respondent violated Rule 8.4(d).

COUNT SIX: CONDUCT INVOLVING MISREPRESENTATION

30. Rule 8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

31. By filing with the Supreme Court Certificates of Compliance in the years 1996 through 2002, each of which contained false representations to the Court relating to the Respondent's maintenance of his law office books and records (as set forth in paragraph 9 of this Petition), the Respondent violated Rule 8.4(c).

COUNT SEVEN: ENGAGING IN CONDUCT PREJUDICIAL TO THE ADMINISTRATION OF JUSTICE

32. Rule 8.4(d) provides that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." The Delaware Supreme Court relies upon the representations made by attorneys in the Certifications of Compliance filed with their Annual Registration Statements each year in the administration of justice governing the practice of law in Delaware.

33. By filing with the Supreme Court Certificates of Compliance in the years 1996 through 2002, each of which contained false representations to the Court relating to the Respondent's maintenance of his law office books and records (as set forth in paragraph 9 of this Petition), the Respondent violated Rule 8.4(d).

## COUNT EIGHT: CONDUCT INVOLVING MISREPRESENTATION

34. Rule 8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

35. By filing with the Supreme Court Certificates of Compliance in the years 1996 through 2002, each of which contained false representations to the Court that all of the Respondent's federal, state and local income taxes had been filed and paid on a timely basis, the Respondent violated Rule 8.4(c).

## COUNT NINE: ENGAGING IN CONDUCT PREJUDICIAL TO THE ADMINISTRATION OF JUSTICE

36. Rule 8.4(d) provides that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." The Delaware Supreme Court relies upon the representations made by attorneys in the Certifications of Compliance filed with their Annual Registration Statements each year in the administration of justice governing the practice of law in Delaware.

37. By filing with the Supreme Court Certificates of Compliance in the years 1996 through 2002, each of which contained false representations that all of the Respondent's federal, state and local income taxes had been filed and paid on a timely basis, the Respondent violated Rule 8.4(d).

At the time of the hearing, ODC presented six exhibits, (without objection) including the audit report of Joseph F. McCullough, dated February 10.2003, together with its attachments, (tabbed 1 through 11). In addition, ODC presented testimony of Martin Zukoff, CPA and Joseph F. McCullough, auditors for the Lawyers' Fund for Client Protection Of The Bar Of Delaware. Mr. Garrett testified on his own behalf but did not present any other witnesses or evidence. Mr. Garrett also requested an opportunity to submit a post-hearing memorandum on the issue of appropriate sanctions. The Panel afforded such opportunity to Mr. Garrett, however, no such memorandum was filed by Mr. Garrett, even after an extension requested by Mr. Garrett was granted.

### STATEMENT OF FACTS

The Board finds that the facts alleged in paragraphs 1 through 17 of the Petition for Discipline in this matter were established by clear and convincing evidence through the unrefuted testimony of Joseph F. McCullough and Martin Zukoff, CPA, auditors for LFCP.

### VIOLATIONS

The Panel finds that the violations alleged in Counts One through Nine, inclusive, in the Petition for discipline were established by clear and convincing evidence.

### SANCTIONS

Delaware's Standards for imposing attorney sanctions require the Board to consider:

(1) *The Nature Of The Ethical Duties Violated*

The violations with which the Respondent is charged fall into three general categories of duties owed by a Delaware lawyer under the Rules:

(1) *Failure to Preserve the Client's Property by:*

(a) Depositing unearned advance fees into his operating account, and thereby

commingling client funds with his own funds (in violation of Rule 1.5(f) and Rule 1.15(a)); and

(b) Failing properly to maintain his law practice books and records for his general escrow account, real estate escrow account, and operating account, from January 1994 through December 2002, in violation of Rule 1.15(d) and former Interpretive Guideline No. 2.

### (2) *Failure to Maintain Personal Integrity* by:

Willfully failing to pay any federal, state, or local income taxes from 1994 through 2001; and

### (3) *Violating Duties Owed As A Professional* by:

(a) Filing Certificates of Compliance with the Delaware Supreme Court each year from 1996 through 2002, falsely stating that he was complying with various lawyer record keeping requirements and filing and paying federal, state and local income tax obligations on a timely basis.

### 2. *The Lawyer's Mental State*

The Respondent's position essentially was that the violations occurred primarily as a result of his failure to properly maintain his books and records which, as a result of extended procrastination, eventually made the task monumental. It is clear, however, that the Respondent was aware of his obligation to respond truthfully to the Supreme Court, Certificates of Compliance for years 1996 through 2002 and that he knowingly failed to do so in order to avoid embarrassment and humiliation. Respondent was also aware of the requirement to file federal and state income tax returns for years 1994 through 2001, but failed to do so as a result of not

having maintained adequate records in order to enable him to do so.

### 3. *The Actual/Potential Injury Caused By The Misconduct*

Although no actual harm to a client as a result of Respondent's misconduct was demonstrated, as a result of the Respondent's failure to properly maintain books and records, it is very difficult to determine whether any actual harm did occur, although there have been no complaints from Respondent's clients alleging any financial injury. However, the commingling of client funds with funds belonging to the lawyer creates a risk of potential injury to clients. Finally, this Court held in *In re Tos*, 610 A.2d, 1370, 1373 (Del.1992) that failure to file or pay income taxes is misconduct which causes serious actual injury to the legal profession.

### 4. *The Existence of Any Aggravating and Mitigating Circumstances*

ABA Standard 9.22 sets forth the following aggravating factors:

(a) Prior disciplinary offenses;

(b) Dishonest or selfish motive;

(c) A pattern of misconduct;

(d) Multiple offenses;

(e) Bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

(f) Submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(g) Refusal to acknowledge wrongful nature of conduct;

(h) Vulnerability of victim;

(i) Substantial experience in the practice of law;

(j) Indifference to making restitution;

(k) Illegal conduct, including that involving the use of controlled substances.

The Board has considered the various aggravating factors and has concluded that the following apply in this matter.

**(a) *Aggravating Factors:***

1. The Respondent demonstrated a dishonest or selfish motive in making false representations to the Delaware Supreme Court on his Certificates of Compliance concerning books, records and taxes for years 1996 through 2002;

2. The Respondent has engaged in a pattern of misconduct over a period of several years;

3. The Respondent has engaged in multiple offenses, including, but not limited to, failure to file or pay taxes, failure to maintain books and records, and filing false certifications to the Supreme Court;

4. The Respondent has substantial experience in the practice of law, having practiced continuously in the State of Delaware since 1980;

5. The Respondent has engaged in illegal conduct by failing to file and pay Federal and State income taxes from 1994 through 2001.

ABA Standard 9.32 sets forth the following factors to be considered in mitigation:

(a) Absence of a prior disciplinary record;

(b) Absence of a dishonest or selfish motive;

(c) Personal or emotional problems;

(d) Timely good faith effort to make restitution or to rectify consequences of misconduct;

(e) Full and free disclosure to Disciplinary Board or cooperative attitude toward proceedings;

(f) Inexperience in the practice of law;

(g) Character or reputation;

(h) Physical disability;

(i) Mental disability or chemical dependency including alcoholism or drug abuse when:

(1) there is medical evidence that the Respondent is affected by a chemical dependency or mental disability;

(2) the chemical dependency or mental disability caused the misconduct;

(3) the Respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and

(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

(j) Delay in disciplinary proceedings;

(k) Imposition of other penalties or sanctions;

(*l*) Remorse;

(m) Remoteness of prior offenses.

The Board has considered the various mitigating factors and has concluded that the following apply in this matter:

**(b) *Mitigating Factors***

1. The Respondent has an absence of a prior disciplinary record, although this mitigating factor is at least partially negated by the long-standing nature of the violations alleged;

2. The Respondent has demonstrated sincere remorse for his conduct;

3. It is likely that Respondent will have imposed upon him severe penalties and sanctions by Federal and State authorities;

4. Although there were initial delays in meeting with the auditors, Respondent subsequently provided full and free disclosure to ODC and demonstrated a cooperative attitude toward the proceedings. Although the Respondent denied the allegations of violations in the Petition for Discipline, the Respondent did not contest

the substance of the allegations of the violations of the Rules at the Board hearing;

5. The Respondent provided limited testimony concerning his own character and reputation and no contradictory evidence was presented. The Board accepts that the Respondent is otherwise a person of good character and reputation.

## RECOMMENDATION OF SANCTIONS

Taking into consideration the foregoing as well as similar cases including: *In re Sanders*, 498 A.2d 148 (Del.1985) (3 year suspension); *In re Sandbach*, 546 A.2d 345 (Del.1988) (3 year suspension, reducible to 2 years upon completion of 400 hours community service); *In re Ayres*, 802 A.2d 266 (Del.2002) (3 year suspension); *In re Autman*, 798 A.2d 1042, 2002 WL 1227213 (June 3, 2002) (ORDER) (3 year suspension); *In re Hiner*, 796 A.2d 654, 2002 WL 923162 (Del.May 2, 2002) (ORDER) (3 year suspension).

The Board recommends that the Court sanction the Respondent by imposing a three (3) year period of suspension from the practice of law and require that the Respondent pay the cost of these proceedings.

DATED: September 9, 2003

CLAY T. JESTER, ESQUIRE
Chair

DATED: September 4, 2003

ROBERT G. GIBBS, ESQUIRE

DATED: September 11, 2003

JAMES M. KEEGAN