In the Matter of a Member of the Bar of the Supreme Court of Delaware: Patrick E. VANDERSLICE, Respondent.

No. 428, 2012.
Board Case No. 2011–0548–B.

Supreme Court of Delaware.

Submitted: Sept. 19, 2012.
Decided: Oct. 12, 2012.

Joelle E. Polesky, Esquire, Office of Disciplinary Counsel, Wilmington, Delaware.

Charles Slanina, Esquire, Finger & Slanina, LLC, Hockessin, Delaware, for Patrick E. Vanderslice.

Before HOLLAND, BERGER and JACOBS, Justices.

PER CURIAM:

This attorney disciplinary matter involves charges of professional misconduct against Patrick E. Vanderslice, Esquire ("Vanderslice"). The Board of Professional Responsibility ("the Board") found that Vanderslice had violated the Delaware Lawyers' Rules of Professional Conduct ("Rules") 1.5(f), 1.15(a) and (b), and 8.4(b) and (c), but not Rule 8.4(d). The Office of Disciplinary Counsel ("ODC") contended that Vanderslice had violated Rule 8.4(d) as well as the other above-cited Rules, and that the Board should have so found. Vanderslice disputes that he violated Rule 8.4(b) (as the Board found) and Rule 8.4(d) (as the ODC contends).

Although the Board and the ODC agree that the presumptive sanction is suspension, the Board now joins Vanderslice in advocating a public reprimand with probation, because of mitigating factors. The ODC takes the position that this Court should suspend Vanderslice for at least one year. We independently determine that Vanderslice should be suspended from the practice of law for one year.

### Facts

Vanderslice, a member of the Delaware Bar since 1999, was an associate at a Delaware law firm from 2000 to 2005, after which he became a partner until he was dismissed from that firm in October 2011. Vanderslice continues to practice law in Delaware.

In 2008 and 2009, Vanderslice began experiencing personal and emotional problems because of deaths in his family. In December 2009, he began seeking treatment for his ongoing depression. In September 2010, his firm instituted a twenty-five percent pay cut for its partners, to ensure the firm's survival during the economic recession. To mitigate his financial difficulties resulting from the pay cut, Vanderslice misappropriated clients' "consultation fees" and "flat fees" from the firm on eight occasions between December 2010 and September 2011. He also caused clients to enter into retainer agreements that failed to provide that any retainer was refundable if unearned, even though in practice his firm refunded any unearned retainers to its clients. There is no evidence that Vanderslice ever diverted any unearned retainers from the firm or its clients.

In September 2011, while Vanderslice was still misappropriating funds, the firm discovered his thefts. In early October 2011, the firm confronted Vanderslice, who confessed and was immediately dismissed. The firm told Vanderslice that he had two weeks to report his misconduct to the ODC, which he did. Altogether, Vanderslice stole $1780 from his firm, for which the firm was later fully reimbursed.[1]

---

1. The Board and the ODC disagree on whether Vanderslice voluntarily reimbursed his firm. The Board found that the reimbursement was voluntary, because Vanderslice re-

## Procedural Background

In the ODC's Petition for Discipline against Vanderslice, it alleged that he violated Rules 1.5(f),[2] 1.15(a)[3] and (b),[4] and 8.4(b),[5] (c),[6] and (d).[7] Vanderslice admitted to having violated Rule 1.5(f) in part,[8] and Rules 1.15(a) and (b), and 8.4(c).

Vanderslice denied, however, that he violated Rule 8.4(b) by committing a "criminal act that reflect[ed] adversely on [his] honesty, trustworthiness or fitness as a lawyer." The Board noted that Vanderslice had committed theft under 11 *Del. C.* § 841(a)[9] when he "took money belonging to his firm while intending to deprive the firm of same, [and found that his conduct] reflected adversely on [his] honesty, trustworthiness and fitness as a lawyer."

The Board found that Vanderslice had not engaged in conduct that was "prejudicial to the administration of justice" under Rule 8.4(d). Specifically, Vanderslice did not violate Rule 8.4(d), because he did not "breach[ ] . . . any duties owed to the legal system, such as being truthful to the court, expediting litigation, avoiding unmeritorious claims, avoiding injury to a client or party, obeying court rules and orders, or avoiding improper communications with those involved in the judicial process."[10]

---

paid the firm from a life insurance distribution that the firm had made to him upon his dismissal. The ODC argues that this life insurance offset was a "forced," and not a voluntary, reimbursement. Our conclusions are not affected by whether the reimbursement was voluntary.

2. Rule 1.5(f) provides that "[a] lawyer may require the client to pay some or all of the fee in advance of the . . . representation, provided that: (1) The lawyer shall provide the client with a written statement that the fee is refundable if it is not earned, [and] (2) The written statement shall state the basis under which the fees shall be considered to have been earned. . . ."

3. Rule 1.15(a) provides that "[a] lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property."

4. Rule 1.15(b) provides that "[u]pon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person . . . [and] shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive. . . ."

5. Rule 8.4(b) provides that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."

6. Rule 8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

7. Rule 8.4(d) provides that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice."

8. Vanderslice admitted that three cases of deficiently drafted retainer agreements constituted three violations of Rule 1.5(f). He claimed, however, that two other cases—where he did not provide retainer agreements to clients who paid consultation fees and flat fees to the firm—did not constitute Rule 1.5(f) violations, because the fees were earned when paid and not retainers subject to Rule 1.5(f). The Board agreed with Vanderslice, and the ODC has not objected to that part of the Board's findings.

9. 11 *Del. C.* § 841(a) provides that "[a] person is guilty of theft when the person takes, exercises control over or obtains property of another person intending to deprive that person of it or appropriate it."

10. In generating that list of legal duties, the Board cited Standard 6.0 of the ABA Standards for Imposing Lawyer Sanctions ("ABA Standards"). *See* ABA Standards (1992), *available at* http://www.americanbar.org/content/dam/aba/migrated/cpr/regulation/standards_sanctions.authcheckdam.pdf.

In determining an appropriate sanction, the Board concluded that Vanderslice violated a duty owed to his clients by furnishing them with deficiently drafted retainer agreements. The Board further found that he violated his duty to maintain personal integrity, by "act[ing] with the most culpable mental state—[intentionally—when he] acted with the conscious objective and purpose of withholding earned fees from his partners." Vanderslice did not harm the firm, however. The firm was fully reimbursed for the relatively minor amount of money taken, and there was no evidence that the missing funds had any effect on the firm's finances. Nor was there any injury to the firm's clients, because the firm always treated the retainers as refundable despite Vanderslice's inaccurate retainer agreements.

The Board found that three factors aggravated the severity of Vanderslice's misconduct: (1) a dishonest or selfish motive, (2) a pattern of misconduct, and (3) multiple offenses.[11] The Board also considered five mitigating factors: (1) the absence of a prior disciplinary record, (2) personal or emotional problems, (3) character or reputation, (4) interim rehabilitation, and (5) remorse.[12] In addition, the Board ascribed "significant" importance to Vanderslice's history of handling over seventy-five pro bono cases.

Based on its analysis of these factors, the Board acknowledged that the presumptive sanction is suspension, but concluded that a public reprimand with two years of probation would be more appropriate.[13] The Board explained that: (i) Vanderslice did not misappropriate client funds but, rather, firm funds; (ii) there was no injury to any client; and (iii) his good character and reputation, public service, and treatment for his depression mitigated the severity of his offenses.

The ODC responded that Vanderslice violated Rule 8.4(d), and also that this Court should impose a suspension of at least one year for his violation of all six Rules. In his Response, Vanderslice contests the Board's conclusion that he violated Rule 8.4(b),[14] and the ODC's claim that he violated Rule 8.4(d). He urges this Court to adopt the Board's recommendation of a public reprimand with probation.

### Discussion

This Court has "the exclusive authority for disciplining members of the Delaware Bar."[15] Although "the Board's recommendation on the appropriate sanction is helpful to the court, it is not binding."[16] This Court "has an obligation to review the record independently and determine whether there is substantial evidence to support the Board's factual find-

---

11. *See* ABA Standard 9.22.

12. *See id.* at 9.32.

13. The Board also recommended that as a condition of his probation, Vanderslice must continue treatment with his therapist, have regular meetings with a practice monitor, and reimburse the ODC for its costs.

14. Vanderslice's objection to the Board's conclusion that he violated Rule 8.4(b) was contained in his September 12, 2012 Response to the *ODC's* Objections. Any objections to the *Board's* Report, however, had to be filed by August 23, 2012. The ODC has therefore moved to strike that portion of Vanderslice's Response that objected to the Board's Rule 8.4(b) finding, arguing that Vanderslice waived his objection by failing to file by August 23, 2012. We need not rule on the ODC's Motion to Strike. As we hold today, Vanderslice violated Rule 8.4(b), even if we consider his Rule 8.4(b) objections, which we do not find compelling.

15. *In re Katz*, 981 A.2d 1133, 1149 (Del.2009).

16. *Id.* (quoting *In re Bailey*, 821 A.2d 851, 866 (Del.2003)).

ings."[17] We review questions of law *de novo.*[18]

Here, the Board and Vanderslice agree that he violated Rule 1.5(f) with regards to his three deficiently drafted retainer agreements, as well as Rules 1.15(a) and (b), and 8.4(c). The ODC agrees with the Board's conclusions, and no longer asserts that two other cases (involving clients' "consultation fees" and "flat fees") constitute additional violations of Rule 1.5(f). We have carefully reviewed the Board's Report, and conclude that the record contains substantial evidence to support the Board's factual findings and conclusions of law regarding Vanderslice's violations of Rules 1.5(f), 1.15(a) and (b), and 8.4(c). We therefore address only three substantive issues: (1) whether Vanderslice violated Rule 8.4(b), (2) whether he violated Rule 8.4(d), and (3) what the appropriate sanction should be.

## I. Whether Vanderslice Violated Rule 8.4(b)

■ Rule 8.4(b) states that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer." The Board found that Vanderslice violated Rule 8.4(b) by committing theft. Vanderslice argues that he did not violate Rule 8.4(b), because the ODC failed to allege in its Petition that his conduct constituted a specific crime.

Although the ODC's Petition did not identify any specific criminal provision, we adopt the Board's conclusions that Vanderslice was not unfairly prejudiced by the omission.[19] Vanderslice committed theft by misappropriating firm funds. That conduct reflects adversely on Vanderslice's honesty, trustworthiness, and fitness to practice law.[20] Therefore, the Board properly concluded that Vanderslice violated Rule 8.4(b).

## II. Whether Vanderslice Violated Rule 8.4(d)

■ Rule 8.4(d) mandates that professional misconduct occurs when a lawyer engages in conduct that is "prejudicial to the administration of justice." The Board argues that Rule 8.4(d) requires a violation of a legal duty under ABA Standard 6.0.[21] Standard 6.0 provides that giving false statements or documents to a court, causing injury or potential injury to a client or party, and engaging in improper communications with persons within the legal system, all constitute such a violation.[22] Quoting Rule 8.4(d)'s annotation in the ABA Annotated Model Rules, Vanderslice argues that Rule 8.4(d) is "usually—but not always—limited to conduct connected with court proceedings." The ODC responds that any "criminal and dishonest conduct by an attorney is, by its very nature, prejudicial to the administration of justice."

Comment 2 to Rule 8.4 offers guidance on the proper interpretation of Rule 8.4(d): "Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable *only* for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, breach of trust, or serious interference with the administration of justice *are* in

---

17. *In re Bailey,* 821 A.2d at 862.

18. *In re Abbott,* 925 A.2d 482, 484 (Del.2007).

19. Bd.'s Rep. at 9.

20. *See id.*

21. *See* ABA Standard 6.0.

22. *See id.* at 6.0–6.3.

that category."[23] The Board's argument—that a Rule 8.4(d) violation requires a breach of a legal duty—is thus overly narrow. Vanderslice's argument—that Rule 8.4(d) is "usually" reserved for conduct related to legal proceedings—also excessively restricts the scope of that Rule. Both the Board and Vanderslice overlook the statement in Comment 2 that offenses involving dishonesty "*are*" necessarily also Rule 8.4(d) violations. The text of that Comment makes clear that a Rule 8.4(d) violation occurs where there is *either* a breach of a legal duty *or* a crime of violence, dishonesty, or breach of trust.[24] On the other hand, the ODC's bright-line interpretation of Rule 8.4(d)—where *any* "criminal and dishonest" conduct would "by its very nature" violate that Rule—is overly broad. As Comment 2 again elucidates, only certain crimes that "indicate [a] lack of those characteristics relevant to law practice" constitute Rule 8.4(d) violations.

■ We interpret Rule 8.4(d) to mean that although not all crimes are "prejudicial to the administration of justice," crimes involving "violence, dishonesty, breach of trust, or serious interference with the administration of justice" are categorically Rule 8.4(d) violations. Given our interpretation of Rule 8.4(d), and because Vanderslice committed theft (an offense involving dishonesty and a breach of trust), we conclude that he should be "professionally answerable" for his conduct under Rule 8.4(d).[25]

## III. Sanctions

■ We hereby impose a one-year suspension on Vanderslice. Attorney disciplinary sanctions "are not designed to be either punitive or penal."[26] The purposes of the attorney disciplinary system are "to protect the public, to protect the administration of justice, to preserve confidence in the legal profession, and to deter other lawyers from similar misconduct."[27] In determining a sanction, this Court considers four factors set forth in the ABA Standards: (1) the ethical duties violated, (2) the lawyer's mental state, (3) the actual or potential injury caused, and (4) any aggravating and mitigating factors.[28]

Vanderslice and the Board urge that a public reprimand with probation be an appropriate sanction, for three reasons. First, there was no harm to Vanderslice's firm because the firm was fully reimbursed for the small amount of money taken, and there was no evidence that the missing funds adversely affected the firm's finances. Second, there was no actual or potential injury to any clients, and third, Vanderslice's mitigating factors outweigh his aggravating factors.

In response, the ODC argues that Vanderslice harmed the firm by misappro-

23. Rule 8.4 cmt. 2 (emphasis added).

24. Although a majority of our cases involving Rule 8.4(d) violations have revolved around violations of a legal duty (such as a failure to pay taxes), we have also found Rule 8.4(d) violations for attorneys who have committed crimes involving violence, dishonesty, or a breach of trust. *See, e.g., In re Nixon,* 2012 WL 3030517 (Del. July 25, 2012) (holding attorney who had been convicted of possessing drugs violated Rule 8.4(d)); *In re Melvin,* 807 A.2d 550, 554 (Del.2002) (noting that "even if a lawyer's criminal conduct does not result in an articulable injury to another person, public confidence in the integrity of the legal profession is undermined when any lawyer engages in criminal conduct").

25. *See* Rule 8.4 cmt. 2.

26. *In re Fountain,* 878 A.2d 1167, 1173 (Del. 2005) (quoting *In re Garrett,* 835 A.2d 514, 515 (Del.2003)).

27. *Id.* (quoting *In re Bailey,* 821 A.2d 851, 866 (Del.2003)).

28. *Id.; see* ABA Standard 3.0.

priating funds at a time when the firm was in a precarious financial situation. Although there is no evidence that the embezzled funds had any adverse effect on the firm's finances, there was a "potential for further injury" to the firm had Vanderslice been able to continue his embezzlements. The ODC also identifies two aggravating factors that were omitted from the Board's Report: (1) Vanderslice's substantial experience in the practice of law; and (2) his involuntary reporting to the ODC that resulted from "firm scrutiny and action," and not from his voluntary self-reporting.[29] The ODC further argues that there is no evidence supporting the Board's view that Vanderslice's personal and emotional problems caused his misconduct. Nor (the ODC points out) do Vanderslice's eight instances of persistent misconduct over ten months support the Board's findings with respect to his good character and reputation.

Vanderslice replies that any potential for his misconduct to cause harm (as the ODC claims) is speculative and rhetorical. Moreover, it is not necessary that his depression was an actual cause of his misconduct, because he does not claim that his ongoing treatment for depression is a defense—only a mitigating factor.

Under ABA Standard 5.12, a suspension is "generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice." A public reprimand, under ABA Standard 5.13, is "generally appropri-

ate when a lawyer knowingly engages in any other [presumably non-criminal] conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law."

We order a one-year suspension, because Vanderslice intentionally committed a criminal act (theft) eight times over a period of ten months, despite possessing a commendable pro bono record and despite other mitigating factors. A public reprimand, usually reserved for inexperienced lawyers (as the cases discussed below indicate), would be unduly lenient.

Our precedent generally supports the imposition of a one-year suspension. In *In re Staropoli*,[30] a reciprocal disciplinary case, we ordered a one-year retroactive suspension for an attorney who had stolen funds from his firm on one occasion, and then continued to misrepresent the theft to his firm. The attorney had not been previously subject to discipline, had fully reimbursed his firm, and had self-reported his misconduct to the ODC.[31] Here, by contrast, Vanderslice stole funds from his firm on eight occasions, and his mitigating factors are offset by five aggravating factors.

In *In re Figliola*,[32] this Court held that reckless and knowing misappropriation of firm and client funds on multiple occasions warranted a six-month-and-one-day suspension. The attorney had *no prior* misconduct, had reimbursed the embezzled funds, and had cooperated with the investigation.[33] In this case, Vanderslice's pat-

---

29. *See* ABA Standard 9.22; *In re Lassen*, 672 A.2d 988, 999 (Del.1996); *In re Figliola*, 652 A.2d 1071, 1077–78 (Del.1995).

30. 865 A.2d 522 (Del.2005); *In re Staropoli*, No. 316, 2004 (Del. Aug. 4, 2004) (interim order).

31. *In re Staropoli*, No. 316, 2004 (Del. Aug. 4, 2004) (interim order).

32. 652 A.2d 1071 (Del.1995).

33. *Id.* at 1077.

tern of misappropriation was intentional—a mental state that points to a more severe sanction for him than for the attorney disciplined in *Figliola*. ·

In *In re Campbell*,[34] an experienced attorney intentionally diverted both firm and client funds to support a gambling addiction. The attorney had no prior disciplinary record, had attempted to ameliorate the consequences of his misconduct, had been undergoing therapy for his gambling compulsion, and had self-reported his misconduct to both his firm and the ODC.[35] This Court ordered that the attorney be suspended for six months and one day.[36] Although Vanderslice did not misappropriate client funds, as the *Campbell* attorney did, Vanderslice also did not self-report his misconduct. Indeed, he confessed his misconduct to his firm only after the firm had confronted him, and he reported himself to the ODC only when faced with "firm scrutiny and action."[37] Compared to the *Campbell* attorney who diverted funds to satisfy a gambling addiction, Vanderslice also has not established any connection between his depression and his misconduct that could mitigate his offenses. If his depression is unrelated to his misconduct, then evidence of Vanderslice's ongoing therapy is irrelevant and should not have been considered as a mitigating factor. Vanderslice's case is therefore more similar to *Staropoli* (where we imposed a one-year, retroactive suspension) than to *Figliola* or *Campbell* (where, in each case, we imposed a six-month-and-one-day suspension).

Two cases cited by the Board, *In re Gielata*[38] and *In re Schaeffer*,[39] are also inapposite here. In *Gielata*, this Court ordered a public reprimand for an attorney who had committed theft in violation of Rules 8.4(b), (c), and (d).[40] We imposed that sanction, however, partly because the attorney was inexperienced in the practice of law and had voluntarily disclosed his misconduct.[41] In *Schaeffer*, we ordered a public reprimand for an attorney who had intentionally telephoned police about a fictitious "hostage situation," again because (among other things) the attorney was inexperienced, and because there were no aggravating factors.[42] Vanderslice, however, is an experienced attorney who did not voluntarily disclose his misconduct either to his firm or to the ODC, and who has five aggravating factors that offset his mitigating factors.

### *Conclusion*

We conclude that by misappropriating firm funds and generating deficiently drafted retainer agreements, Vanderslice violated Rules 1.5(f), 1.15(a) and (b), and 8.4(b), (c), and (d). His five aggravating factors also persuade us that the Board's recommendation of a public reprimand with probation would be too lenient here.

Accordingly, we order that Patrick E. Vanderslice be prohibited and suspended from engaging in the practice of law for one year. During the suspension, Vanderslice shall not conduct any act directly or indirectly constituting the practice of law,

---

**34.** 760 A.2d 162 (Del.2000).

**35.** *Id.; In re Campbell,* No. 247, 2000 (Del. May 25, 2000) (Bd. order and op.).

**36.** *In re Campbell,* 760 A.2d at 162.

**37.** *See In re Lassen,* 672 A.2d 988, 999 (Del. 1996); *In re Figliola,* 652 A.2d at 1077–78.

**38.** 933 A.2d 1249 (Del.2007).

**39.** 45 A.3d 149 (Del.2012).

**40.** 933 A.2d at 1249.

**41.** *Id.*

**42.** 45 A.3d at 149.

including the sharing or receipt of any legal fees. Vanderslice shall not have any contact with clients or prospective clients, or witnesses or prospective witnesses, if he is acting as a paralegal, legal assistant, or law clerk under the supervision of a member of the Delaware Bar, or otherwise.

The ODC shall file a petition in the Court of Chancery for the appointment of a Receiver of Vanderslice's law practice pursuant to Procedural Rule 24; the Receiver shall provide notice to clients, adverse parties, and others as required by Procedural Rule 23; and the Receiver shall make such arrangements as may be necessary to protect the interests of any of Vanderslice's clients and the public. Vanderslice shall cooperate in all respects with the Receiver, including providing him/her with all law office books and records.

In addition, we order that the Board's Report be made public, that Vanderslice fully cooperate with the ODC in any of its other efforts to monitor his compliance with this Opinion, and that the ODC disseminate this Opinion in accordance with Rule 14 of the Delaware Lawyers' Rules of Disciplinary Procedure. The ODC is directed to submit within ten days of the date of this Opinion the costs of the disciplinary proceedings. Thereafter, Vanderslice is directed to have all costs paid within thirty days.