**In the Matter of a Member of the Bar of the Supreme Court of the State of Delaware, David S. SHAMERS, Respondent.**

No. 67, 2005.

Supreme Court of Delaware.

Submitted: April 13, 2005.
Decided: May 20, 2005.

David S. Shamers, Esquire, Wilmington, Delaware.

Mary Susan Much, Esquire, Office of Disciplinary Counsel, Wilmington, Delaware.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court *en Banc*.

PER CURIAM.

This matter is before the Court for disciplinary action upon review of the February 2005 Final Report and Recommendation ("Final Report") of the Board on Professional Responsibility ("Board"). The Respondent, David S. Shamers ("Shamers"), has been a member of the Bar of this Court since 1982. The Board has recommended a public reprimand, a two-year suspension with conditions and a three-year public probation following suspension, with additional conditions.

The Office of Disciplinary Counsel ("ODC") agrees with the two-year suspension, but objects to the Board's recommendation that Shamers be allowed to petition for reinstatement one year from the date of the suspension, subject to conditions.

The ODC argues that the Board's recommendation is not consistent with prior disciplinary cases. The ODC suggests that Shamers' ability to apply for reinstatement should vest only upon the conclusion of a two-year suspension. The ODC also requests authorization to petition the Chancery Court for a Receiver of Shamers' law practice.

After careful consideration, we have decided that a two-year suspension is an appropriate sanction. We also direct the ODC to petition the Court of Chancery for a Receiver of Shamers' law practice. If Shamers petitions for reinstatement after his two-year suspension, any appropriate conditions will be addressed at that time, in the event that he otherwise demonstrates his rehabilitation.

*Facts* [1]

Shamers has been engaged in private solo practice with a law office in Wilmington. Shamers' wife assisted him with his financial books, records, tax filings and payments. The ODC initially became aware of Shamers' misconduct on July 22, 2003, when one of his client's notified the ODC that a check issued from Shamers' escrow account had been returned for insufficient funds.

The ODC requested an investigative and compliance audit of Shamers' financial books and records. Joseph McCullough, an auditor from the Lawyer's Fund for Client Protection, attempted to perform the audit but was unable to complete that task due to discrepancies in Shamers' escrow account and the nonexistence of a client subsidiary ledger. The follow-up audit revealed the professional misconduct that led to the filing of these proceedings.

---

1. The facts are taken almost verbatim from the Board's Petition for Discipline.

## Ethical Violations Admitted

The ODC filed a Petition for Discipline on October 7, 2004. The petition alleged Shamers violated the following Delaware Lawyers' Rules of Professional Conduct: 1) Rule 1.15(a),[2] for failure to maintain complete records of escrow account funds; 2) Rule 1.15(b), for failure to safeguard client funds; 3) Rule 1.15(d), for failure to maintain books and records; 4) Rule 1.15A, for failure to designate his attorney trust account as a 1.15A account; 5) Rule 5.3, for failure to supervise non-lawyer assistants, i.e., his wife and nephew, which gave his nephew the opportunity to embezzle client funds; 6) Rule 8.4(c), for engaging in conduct involving dishonesty, fraud, deceit or misrepresentation by misrepresenting information on his Certificates of Compliance; 7) Rule 8.4(d), for engaging in conduct prejudicial to the administration of justice by misrepresenting information on his Certificates of Compliance; and 8) Rule 8.4(d), for engaging in conduct prejudicial to the administration of justice by failing to file federal and state tax returns for three years (2000, 2001 and 2002).

No answer to the Petition for Discipline was filed. Pursuant to Rule 9(d)(2) of the Delaware Lawyers' Rules of Disciplinary Procedure ("Rules"), all of the allegations and charges were deemed admitted.

## Aggravating Factors

The Board found that the following aggravating factors exist in this disciplinary matter:

1) Shamers has engaged in a pattern of misconduct, including (a) engaging in a pattern of conduct involving false certifications of compliance to the Supreme Court; and (b) failing to satisfy basic financial obligations relating to the proper maintenance of law practice books and records

and the filing and payment of federal and state income taxes [*ABA Standard for Imposing Lawyer Discipline ("ABA Standard")* § 9.22(c) ];

2) Shamers' misconduct in the pending matter consists of multiple offenses [*ABA Standard* § 9.22(d) ];

3) Shamers' failure to file and pay federal and state income taxes federal violation of Rule 8.4(b) as construed by the Interpretive Guideline, constitutes illegal conduct [*ABA Standard* § 9.22(k) ]; and

4) Shamers has substantial experience in the practice of law, having been admitted to the Delaware Bar in 1982 [*ABA Standard* § 9.22(i) ].

## Mitigating Factors

The Board found that the following mitigating factors exist in this disciplinary matter:

1) Shamers has no prior disciplinary record [*ABA Standard* § 9.32(a) ];

2) Shamers has now filed Federal and State income tax returns. The ODC questions Shamers' efforts in addressing the books and records issues presented. The Board believes Shamers is sincere and has exhibited remorse, but questions his judgment and notes his apparent inability, even in the face of these proceedings, to take appropriate steps to bring his books and records into compliance. This may be explained by his continued, but misplaced, reliance on his wife, who despite obvious affection and devotion to her husband, appears unable to bring the books and records into compliance. It has been well over a year since the first audit, and almost one and one-half years since the incident in July 2003 that brought these matters to the attention of the ODC;

**2.** Delaware Lawyers' Rules of Professional Conduct 1.15(a) (2005).

3) Shamers has fully cooperated with the ODC, and in the proceedings before the Board [*ABA Standard* § 9.32(e) ];

4) Shamers has recognized the wrongfulness of his conduct, as evidenced by (a) his admissions to all of the allegations made and the violations charged in the Petition for Discipline (he testified that he did not file an answer because the allegations are true); and (b) his testimony. Shamers has also expressed remorse for the misconduct although the ODC questions his remorse [*ABA Standard* § 9.32(1) ]; and

5) Shamers volunteers his time to serve as a guardian *ad litem* for children (Family Court) and to serve as a special master in Family Court. He apparently has a history of serving clients in need, even where it may not be in his economic best interests to do so.

### Board's Recommended Discipline

After considering the aggravating and mitigating factors, the Board determined that Shamers should be suspended from the practice of law. The Board recommended a public reprimand, a two-year suspension, with conditions, and the ability to petition for reinstatement after one year from the date of the suspension. As grounds for this recommendation, the Board relied upon its finding that, (1) an "extended suspension is likely to have a significant negative financial impact on Shamers," based on his testimony that it would be his "economic downfall," and Shamers' belief that 2005 could generate the needed income to pay his current tax liabilities; and (2) its analysis of this Court's recent decision in *In re Landis*.[3] The Board also recommended a three-year public probation upon Shamers' reinstatement to the practice of law.

### ODC's Objections

The ODC objected to the Board's recommendation. The ODC argues that Shamers should be allowed to petition for reinstatement only at the termination of his two-year suspension. The ODC contends that the Board's sanction is inconsistent with prior disciplinary decisions. The ODC also argues that the Board's concern for the financial impact the suspension would have on Shamers is inappropriate, given the importance of protecting the public from the egregious conduct that is admitted in this case. Finally, the ODC requests that this Court allow it to petition the Chancery Court for a Receiver of Shamers' law practice, due to Shamers' continued inability to remedy his escrow accounting deficiencies.

### Shamers' Objections

Shamers also objects to the Board's recommendations. He argues that it is virtually impossible for a private attorney to comply with the Delaware Rules of Professional Conduct without repercussions. Shamers submits that his sanction should consist of a public reprimand and a prohibition from all real estate settlements and refinance work.

### Standard of Review

This Court "has an obligation to review the record" in a disciplinary proceeding "independently and determine whether there is substantial evidence to support the Board's factual findings." [4] This Court reviews the Board's conclusions of law *de novo*.[5] As to the Board's recom-

---

3. *In re Landis,* 850 A.2d 291 (Del.2004).

4. *In re Bailey,* 821 A.2d 851, 862 (Del.2003) (citing *In re Reardon,* 759 A.2d 568, 575 (Del. 2000)).

5. *Id.*

mendation of an appropriate sanction, this Court has the exclusive authority for disciplining members of the Delaware Bar. Therefore, we have stated that "while the Board's recommendations on the appropriate sanction to be imposed are helpful, they are not binding on this Court." [6] This Court "has wide latitude in determining the form of discipline, and [that it] will review the recommended sanction to ensure that it is appropriate, fair and consistent with ... prior disciplinary decisions." [7]

### Protracted Serious Misconduct

The Board found that Shamers failed to comply with various books and recordkeeping rules, failed to adequately supervise his bookkeeper, and engaged in misconduct involving fraud, deceit, and misrepresentation and misconduct that is prejudicial to the administration of justice. Specifically, the Board found that Shamers: 1) failed to maintain records of cash receipts/disbursements, bank reconciliations, client listings, and a client subsidiary ledger for his escrow account since 2000; 2) failed to safeguard client funds by: a) failing to hold approximately $9,622.20 in his escrow account from a 1998 real estate settlement for Brian Barr; b) issuing a check from his escrow account to a client on two separate occasions against insufficient funds; c) issuing a check to the Sussex County Recorder of Deeds against insufficient funds; d) issuing a check to New Castle County for payment of transfer tax against insufficient funds; 3) failed to maintain his books and records in accordance with Rule 1.15(d); 4) failed to supervise his wife—in fact he "provided virtually no oversight to his wife in the maintenance of the firm's books and records since she began working at the firm" in 1998; 5) failed to timely file and pay his personal income taxes for three years—he signed blank tax returns; and 6) misrepresented the status of his books and records and tax obligations to this Court on his 2001, 2002 and 2003 Certificates of Compliance.

Significantly, the Board determined that Shamers had failed to resolve his books and records and tax deficiencies as of the date of the hearing. Moreover, Shamers had not resolved these problems as of the January 2005 post-hearing submission. The Board found that Shamers had a "misplaced reliance on his wife, who ... appears unable to bring the books and records into compliance." The Board questioned Shamers' "apparent inability, even in the face of these proceedings, to take appropriate steps to bring his books and records into compliance."

### Lawyer Sanction Standards

 Lawyer disciplinary sanctions "are not designed to be either punitive or penal." [8] "The objectives of the lawyer disciplinary system in Delaware are to protect the public, to protect the administration of justice, to preserve confidence in the legal profession, and to deter other lawyers from similar misconduct." [9] The focus of the lawyer disciplinary system in Delaware is not on the lawyer, but rather on the danger to the public that is ascertainable from the lawyer's record of professional misconduct.[10] To further these objectives and "to promote consistency and predictability in the imposition of disciplin-

---

6. *Id.* at 877.

7. *Id.*

8. *In re Garrett,* 835 A.2d 514, 515 (Del.2003).

9. *In re Bailey,* 821 A.2d 851, 867 (Del.2003).

10. *In re Hull,* 767 A.2d 197, 201 (Del.2001).

ary sanctions," this Court looks for guidance to the four-factor test established by the ABA Standards for Imposing Lawyer Sanctions: the ethical duties violated by the lawyer; the lawyer's mental state; the extent of the actual or potential injury caused by the lawyer's misconduct; and the existence of aggravating and mitigating factors.[11]

### Prior Delaware Disciplinary Cases

Where there is a finding of continuous failure to file and pay income taxes and failure to maintain law office books and records, the Court has generally found that a suspension of the lawyer is appropriate and usually that sanction is for three years.[12] In reviewing books and records cases, this Court considers whether the conduct was an isolated incident or continued without correction for several years and whether the violations could be readily repeated.[13] We also intend to inform members of the Bar and the general public that a lawyer's recordkeeping and tax obligations are serious matters.[14]

In recommending that this Court impose the graduated sanction of a two-year suspension, with the ability to petition for reinstatement one year from the date of sanction subject to conditions, the Board determined that "an extended suspension [would] have a significant negative financial impact on Shamers." The Board also stated that the imposition of this sanction would "maintain consistency with the [Court's] decisions addressing similar con-

duct." The Board based this latter determination on the Court's decision in *In re Landis*,[15] allowing Mr. Landis to petition for reinstatement six months from the date of the suspension, followed by a three-year probation and practice limitations.[16]

In our view, the *Landis* matter is distinguishable. Landis failed to maintain proper operating and escrow accounts for a period of seven years; unidentified funds and negative balances existed in 41 client escrow accounts; he failed to file and pay employee payroll taxes for six years and state and federal personal taxes for seven years; and he failed to accurately report the status of his books and records and tax obligations on his Certificates of Compliance for six years.[17] Nevertheless, this Court determined that the mitigating factors in favor of a lesser suspension strongly favored Landis. Landis devoted his career to public service; acknowledged the wrongfulness of his conduct; had taken significant steps to rectify his bookkeeping and tax problems; suffered serious emotional and personal problems; and cooperated fully with the disciplinary process.[18]

There are several significant differences between Landis' conduct and Shamers' conduct. In *Landis*, there was no finding of actual injury to clients due to Landis' failure to maintain proper books and records. No such determination could be made in the instant matter due to Shamers' lack of a client subsidiary ledger. In fact, Shamers' lack of supervision permit-

11. *ABA Standards for Imposing Lawyer Sanctions* 8 (1992), *available at* http://www. abanet.org/cpr/ regulation/standar ds_sanctions.pdf. *See also In re Bailey*, 821 A.2d at 866.

12. *In re Landis*, 850 A.2d 291, 293 (Del.2004), *citing In re Garrett*, 835 A.2d 514 (Del.2003).

13. *See In re Benson*, 774 A.2d 258 (Del.2001); *In re Landis*, 850 A.2d at 293.

14. *In re Benson*, 774 A.2d at 262–63.

15. *In re Landis*, 850 A.2d 291 (Del.2004).

16. *Id.*

17. *Id.* at 292.

18. *Id.* at 293.

ted his nephew to embezzle client funds. Landis took significant steps to correct the bookkeeping and tax problems and to rectify those issues prior to the Board's review of the matter. In this case, Shamers has done little, if anything, to correct the deficiencies in his books and records or to safeguard client and third party funds since these matters came to his attention in 2003.

Although he has filed his tax returns, Shamers has made no effort to pay, or make payment arrangements for, these taxes. In fact, the evidence presented to the Board illustrated a continuing inability to address and rectify these tax obligations. The record reflects Shamers was still overdrawing his escrow account and unable to trace funds from real estate settlements up to the date of the hearing.

Shamers also relies upon the decision of *In re Bailey*.[19] That proceeding involved a lawyer's sustained and systematic failure to provide oversight over his books and records. It resulted in a suspension for a period of six months and one day. Bailey's books and records deficiencies existed for a one-year period; he had payroll tax deficiencies for five quarters; he failed to pay, despite timely filings thereof, personal taxes for three years; and failed to accurately represent the status of his books and records and tax obligations for four years on his Certificates of Compliance.[20] Bailey's case is also distinguishable. Bailey began extensive remedial measures immediately following the LFCP audit, which brought these deficiencies to his attention.[21]

In Shamers' case, it is still not clear what happened to the $9,622.20 that is no longer in escrow from the 1998 real estate settlement for Brian Barr—although the client has now been paid by Shamers. As we have already noted, the Board determined that Shamers' escrow accounts remain out of compliance as of the hearing date and the dates of the post-hearing submissions. The ODC argues that Shamers' persistent inability to manage his law practice books and records; oversee his bookkeeper/wife; and pay, or make payment arrangements regarding his personal income taxes over the past several years "echoes Bailey's misconduct but on a grander scale and, therefore, warrants a more severe sanction."

### *Suspension Appropriate Sanction*

 The inherent and exclusive authority for disciplining members of our Bar is vested in this Court.[22] The Court has wide latitude in determining the form of discipline to be imposed.[23] In imposing sanctions, the Court is guided by its precedents.[24]

19. *In re Bailey*, 821 A.2d 851 (Del.2003).

20. *Id.* at 854–55.

21. *Id.* at 866.

22. See *In re Green*, 464 A.2d 881, 885 (Del. 1983).

23. See *Matter of a Member of the Bar*, 226 A.2d 705, 707 (Del.1967).

24. *In re Ryan*, 498 A.2d 515 (Del.1985) (suspended for two years for altering a letter from state securities agency that rejected registration of securities offered for sale by employer, with the intent to make employer believe that securities had been accepted for registration); *In re Tos, II*, 576 A.2d 607 (Del.1990) (suspended for one year for failing to provide competent representation, failing to comply with requests of the Supreme Court and Family Court Clerk, and failing to comply with Supreme Court directions); *In re McCann*, 669 A.2d 49 (Del.1995) (suspended for one year for missing filing deadlines, failing to respond to court orders, neglecting to inform client that appeal had been dismissed, identifying self as "nephew" in clients will, submitting falsified evidence to tribunal); *In re Mekler*, 669 A.2d 655 (Del.1995) (suspended for

A lawyer's professional misconduct involving multiple offenses of willful failure to file income tax returns has warranted lengthy periods of suspension.[25] In each of these disciplinary cases, the record reflected that the lawyer had engaged in professional misconduct involving the *failure to file* income tax returns. More recently, in the case of *In re Garrett*,[26] this Court imposed a three-year suspension on a lawyer whose misconduct included violation of Rule 8.4(b), Interpretive Guideline for willful failure to file or pay any federal or state income taxes for eight consecutive tax years (1994 through 2001). In *Garrett*, we emphasized that a lawyer's record of "knowing misconduct ... over a period of several years" involving lawyer books and records, unfiled tax returns, and false Certificates of Compliance warrants suspension from the practice of law, and concluded that based upon the Board's finding of fact and violations of the Rules, a three-year suspension was "consistent with this Court's prior holdings in similar cases."[27] Our decisions in *Landis* and *Bailey* reflect ameliorating circumstances that are not present in Shamers' case.

The record in Shamers' case demonstrates a five-year failure to maintain proper books and records and safeguard client funds; a six-year failure to supervise his wife/bookkeeper and his nephew in the maintenance of these records, resulting in embezzlement by his nephew; a three-year failure to timely file and pay personal state and federal income taxes; and at least a three-year failure to accurately report the status of his books and records and tax obligations on his Certificates of Compliance. The complete disarray of Shamers' financial records is graphically illustrated by the $9,622.20 that was missing from his escrow account for the 1998 Brian Barr real estate settlement. Although Shamers estimated that the embezzlement by his employee/nephew was less than $3000, Shamers could not provide any verifying documentation and apparently borrowed funds to pay Brian Barr when Shamers could not account for the disbursements from that escrow account. As the Board wrote, Shamers' "lack of conscious intent to utilize client funds improperly *does not negate his general awareness of these ongoing duties, brought to his attention at least once every year when signing annual registration statements under oath.*" Despite Shamers' knowledge of his nephew's embezzlement, Shamers' financial records remained in disarray at the time of the Board hearing.

---

one year for failing to review clients file until five months after petition for review of child support order, submitting falsified documents to court, incorrectly informing clients that continuance was obtained, failing to appear at review, failing to communicate with court); *In re Lassen*, 672 A.2d 988 (Del.1996) (three year suspension for making personal restaurant charges to clients' accounts, disguising charges, making misrepresentations to bankruptcy court, and charging fictitious billable hours to clients); *In re Faraone*, 722 A.2d 1 (Del.1998) (six month suspension and eighteen month probation for misrepresenting material information and failing to correct certain misunderstandings concerning real estate transactions). *See In re Christie*, 574 A.2d 845, 853 (Del.1990).

**25.** *See, e.g., In re Sanders*, 498 A.2d 148 (Del. 1985) (three-year suspension); *In re Sandbach*, 546 A.2d 345 (Del.1988) (three-year suspension, reducible to two years upon completion of 400 hours of community service); *In re Ayres*, 802 A.2d 266 (Del.2002) (included bookkeeping failures—three-year suspension); *In re Autman*, 798 A.2d 1042 (Table) (Del. 2002) (included bookkeeping failures—three-year suspension); and *In re Hiner*, 796 A.2d 654 (Table) (Del.2002) (included bookkeeping failures—three-year suspension).

**26.** *In re Garrett*, 835 A.2d 514 (Del.2003).

**27.** *Id.* at 515 n. 4 (citing *Sanders, Sandbach, Ayres, Autman* and *Hiner*).

Most significant in this case is Shamers' suggestion that complete compliance with recordkeeping Rule 1.15 is impossible. The record reflects that Shamers is correct with regard to his own lack of recordkeeping ability—since unlike Landis or Bailey, he has been unwilling or unable to comply—despite the fact that every other member of the Delaware Bar accepts responsibility for maintaining financial records that are in proper compliance with Rule 1.15. Instead of even attempting to comply with Rule 1.15, Shamers asks that his practice be limited by excluding him from conducting real estate closings. The Board acknowledges that Shamers lacks the ability to maintain proper financial records because it recommends that Shamers "never again have responsibility for the financial record keeping requirements imposed by Rule 1.15, and shall have no authority to issue checks from operating or escrow accounts."

The Board concluded that Shamers' personal tax filings and professional financial records are in chaos. Shamers has failed to exercise any oversight in either capacity. Shamers has also made consistent misrepresentations to this Court on his annual Certificates of Compliance. Nevertheless, Shamers asks this Court to continue to allow the public to entrust him with their legal needs. That is an unacceptable risk for this Court to permit even in a limited or restricted capacity. Shamers must be sanctioned for the ethical violations he has committed and the public must be protected until he has demonstrated his rehabilitation.

We have concluded a two-year period of suspension is the appropriate sanction for Shamers. Shamers' inability to correct his escrow accounting deficiencies raise significant concerns that he will not effectively discharge his obligations under Rules 21 and 23 of the Delaware Lawyers' Rules of Disciplinary Procedure upon his suspension from the practice of law. We have concluded that Shamers poses an ongoing risk of harm to clients and former clients unless a Receiver is appointed for the purpose of protecting the interests of those persons. Accordingly, it is hereby ORDERED that Shamers be disciplined as follows:

1) that he be suspended from engaging in the practice of law as a member of the Delaware Bar for a period of two years, commencing on the date of this decision;

2) that Shamers be reprimanded publicly;

3) that Shamers discharge his obligations under Rules 21 and 23 of the Delaware Lawyer Rules of Disciplinary Procedure;

4) that during his suspension, Shamers shall not share in any legal fees arising from clients or cases referred by Shamers during the period of suspension to any other attorney or share in any legal fees earned for services by others during such period of suspension;

5) that during his suspension, Shamers shall pay all of the ODC's costs in this proceeding; pay the costs of the LFCP audits; and pay all past and current federal and state income taxes;

6) that Shamers must fully cooperate with the ODC in its efforts to monitor his compliance with the suspension order

7) that the ODC's application for leave to petition the Court of Chancery for a Receiver of Shamers' law practice is hereby granted;

8) that this Opinion and Order be disseminated by Disciplinary Counsel in accordance with the Rules of the Board of Professional Responsibility.