In the Matter of a Member of the Bar of the Supreme Court of the State of Delaware, Darryl K. FOUNTAIN, Respondent.

No. 198,2005.

Supreme Court of Delaware.

Submitted: June 6, 2005.
Decided: July 11, 2005.

James E. Liguori, Esquire, Dover, Delaware, for Respondent.

Mary Susan Much, Esquire, Office of Disciplinary Counsel, Wilmington, Delaware.

Before HOLLAND, BERGER, JACOBS and RIDGELY, Justices, and STOKES, Judge,[1] constituting the Court *en Banc.*

PER CURIAM.

This matter is before the Court for disciplinary action upon review of the April 2005 Final Report and Recommendation ("Final Report") of the Board on Professional Responsibility ("Board"). The Respondent, Darryl K. Fountain ("Fountain"), has been a member of the Bar of this Court since 1984. The Board has recommended a one-year suspension with the possibility of applying for reinstatement after six months, if certain conditions are met. The Office of Disciplinary Counsel ("ODC") argues that a one-year sus-

pension is inappropriate and also objects to the Board's recommendation that Fountain be allowed, subject to conditions, to petition for reinstatement six months from the date of the suspension.

The ODC suggests that the appropriate sanction for undisputed ethical violations is a three-year suspension and that Fountain's ability to apply for reinstatement should vest only upon the conclusion of a three-year suspension. The ODC argues that the Board's recommendation is not consistent with prior disciplinary cases. The ODC also requests authorization to petition the Chancery Court for a Receiver of Fountain's law practice.

After careful consideration, we have decided that a three-year suspension is an appropriate sanction, subject to the right to apply for reinstatement after two years if certain conditions are met and Fountain otherwise demonstrates his rehabilitation. We also direct the ODC to petition the Court of Chancery for a Receiver of Fountain's law practice.

### Facts [2]

Fountain was admitted to the Bar of the Supreme Court of Delaware in 1984. At all times relevant to the Petition, Fountain was engaged in the private practice of law with an office in Wilmington.

### Case No. 18, 2004

On April 2, 2004, Martin Zukoff, CPA, the auditor for the Lawyers' Fund for Client Protection conducted a compliance audit of Fountain's law office financial books and records. Mr. Zukoff issued a written audit report on April 8, 2004 ("Audit Report"). The Audit Report stated that Fountain had failed properly to main-

---

1. Sitting by designation pursuant to Del. Const. art. IV, § 12 and Supr. Ct. R. 2 and 4.

2. The facts are taken almost verbatim from the Board's Report.

tain his financial books and records for his law practice from at least 1995 through the date of the audit. Specifically, the Audit Report indicated that Fountain (1) failed to maintain a cash receipts/cash disbursements journal for each bank account; (2) failed to reconcile his operating account and his escrow account; and (3) failed to maintain a client subsidiary ledger for his attorney escrow account. Accordingly, Mr. Zukoff was unable to determine, among other things, if negative client balances existed or whether earned fees were timely transferred to the operating account. Further, Mr. Zukoff noted that Fountain had failed to file his 2002 federal and state personal income tax returns and his Wilmington Net Profit tax returns.

Mr. Zukoff also noted that Fountain had failed accurately to report the status of his books and records on his Certificates of Compliance filed in the period from 1996 through 2004. Mr. Zukoff also found that Fountain was co-mingling his own funds with client funds in his escrow account and that for the period of April 2003 through February 2004, Fountain's escrow account had 26 overdraft balances. Because Fountain's escrow account was not designated as a Professional Conduct Rule 1.15A account, the ODC had not received notices of these overdrafts. Fountain's operating account had 20 overdraft balances for the same period.

The Audit Report noted that one week before the scheduled audit, Fountain had engaged a CPA firm to bring his books and records into compliance with the Rules of Professional Conduct. As of the date of the audit, however, the CPA firm was only able to enter deposits and cancel check transactions for the operating and escrow accounts from January 2003 through February 2004. No reconciliations had been performed nor client lists or ledgers created for the escrow account.

A follow up audit was performed on September 1, 2004. Mr. Zukoff reported that Fountain had opened a "new" escrow account and had entered check and deposit transactions in the computer system from April 13, 2004 through June 24, 2004. He reported, among other things that: no monthly reconciliations had been performed; no client balance listings had been performed; no monthly summary listings had been prepared; it was still not possible to determine whether any negative client balances existed or whether there were any unidentified client funds; overdraft balances were noted for each month from June through August 2004; and Fountain had not yet filed his 2002 federal or state income tax returns or his Wilmington net profit tax return. Finally, Mr. Zukoff noted that he was unable to locate retainer deposits from three clients (discussed below) who had filed complaints against Fountain.

### Case No. 29, 2004

On April 1, 2004, one of Fountain's clients, Christina Paoli, filed a disciplinary complaint alleging that despite numerous requests, Fountain had failed to provide her with an accounting of her retainer funds. By letter dated April 6, 2004, the ODC asked Fountain to respond to the allegations in Ms. Paoli's complaint and to provide a copy of his retainer letter and an accounting of the funds. Fountain filed a response on April 21, 2004 stating that Ms. Paoli had paid him a $1,000 retainer in or about September 2003 and three subsequent $200 payments but that he had failed to document his use of these funds. Fountain's retainer letter failed to advise Ms. Paoli how the retainer was to be earned and drawn down from his escrow account. By letter dated April 22, 2004, ODC again requested Fountain to provide a statement of the client's account and a

time line of his representation. Fountain failed to provide this information.

### Case No. 30, 2004

On April 13, 2004, Joseph Rychalsky, Jr. paid Fountain a $3,000 cash retainer for legal representation in connection with a criminal matter in the Superior Court. Fountain gave Mr. Rychalsky a retainer letter confirming receipt of the $3,000 and indicating that it would be used for "1) entering [his] appearance, 2) facts investigation, 3) legal research, and 4) penalty calculation." The letter did not set forth Fountain's hourly rate. On April 20, 2004, Fountain appeared in Superior Court over one hour late for the client's trial and without the client's file. Following repeated attempts to reach Fountain in late April, Mr. Rychalsky determined that he wished to terminate Fountain's representation. On May 22, 2004, Mr. Rychalsky received a $1,537.50 refund check from Fountain as well as an account statement of the use of his retainer. The account statement shows that Fountain charged Mr. Rychalsky for legal services at the rate of $250 per hour. The refund check was post dated to May 26, 2004. By letter dated June 28, 2004, the ODC directed Fountain to respond to Mr. Rychalsky's complaint by July 12, 2004. Fountain failed to respond.

### Case No. 41, 2004

In or about February 2000, Stephen Bunting retained Fountain to represent him in a defamation lawsuit. Mr. Bunting paid Fountain a $7,500 retainer. Fountain advised Mr. Bunting that the suit would be filed by April 2004, but it was not. Therefore, Mr. Bunting sought periodic status updates from Fountain.

On May 27, 2004, Fountain confirmed in writing the receipt of Mr. Bunting's retainer but he did not indicate how that re-

tainer would be earned. On or around August 24, 2004, Mr. Bunting terminated Fountain's representation and requested the return of all documents as well as his retainer. In response, Fountain sent Mr. Bunting a "draft" pleading but he did not immediately return any documents. Fountain did not return the retainer or any portion thereof. At the September 1, 2004 follow up audit discussed above, Mr. Zukoff was unable to locate or track the receipt and use of Mr. Bunting's retainer.

At the hearing, Fountain testified that he deposited Mr. Bunting's check into his operating account in February 2004 and that he drew down on it immediately. Fountain also testified that he prepared an accounting of his use of the funds and that the accounting should have been included in the materials that he sent to Mr. Bunting following the termination. Mr. Bunting denied receiving any accounting. Mr. Bunting also testified that Fountain had told him that Fountain would have to figure out what portion of the retainer would be returned.

### Case No. 5, 2004

In January 2003, Fountain filed his Affidavit of Compliance with the Commission on Continuing Legal Education ("Commission") verifying that he had completed 1.4 credit hours towards his required 24 credit hours. Fountain included with his submission a proposed make-up plan to bring his CLE deficiency into compliance with the Supreme Court Continuing Legal Education Rules ("CLE Rules"). The Commission accepted Fountain's proposed make-up plan and advised him that it had to be completed by April 30, 2003, with notice to the Commission no later than May 15, 2003, in order to comply with the CLE Rules.

On March 28, 2003, Fountain submitted a revised make-up plan verifying that he

had completed 12 credits, including 5.5 credits of enhanced ethics and stating that he would complete the remaining required credits by May 19, 2003. On April 5, 2003, the Commission advised Fountain that it could not approve the revised plan, as the completion of the credits would fall outside the allowable time period of April 30, 2003. Fountain was further advised that the course work he had completed would be applied towards his December 31, 2002 reporting requirements but that he would be subject to late fees.

On July 8, 2003, the Commission issued a Notice of Non–Compliance advising Fountain that late fees were accruing and that his failure to comply with the CLE Rules would be forwarded to the ODC if he failed to respond on or before July 28, 2003. Fountain failed to respond to the July 8, 2003 Notice. On October 9, 2003, the Commission issued a statement of non-compliance to the ODC. In response to a request from the ODC, Fountain admitted his non-compliance with the CLE Rules and outlined a plan to take CLE courses through the Internet. Various attempts by the ODC to contact Fountain by phone and mail in the period from December 2003 through March 2004 were fruitless. Fountain failed to respond to these inquiries.

At the time of the February 23, 2005 Board hearing, Fountain remained non-compliant with his CLE reporting requirements. As of December 31, 2002, his late fees were over $1,000. Fountain testified that he had submitted a proposal to sponsor a consumer law program to the Delaware State Bar Association ("DSBA") which, if accepted, would provide him an unspecified number of CLE credits.

### Ethical Violations Admitted

As set forth in the Petition for Discipline filed by the ODC and admitted in the Answer, Fountain has violated several of the Delaware Lawyers' Rules of Professional Conduct (the "Rules").

Case No. 18 involves violations of Rules 1.15(a) (lawyer shall hold client property separate from lawyer's property and maintain complete record of escrow account funds), 1.15(d) (detailing specific requirements for maintenance of attorneys' books and records), 1.15A (requiring designation of accounts into which escrow funds deposited as a 1.15A account), and 8.4(d) (professional misconduct to engage in conduct prejudicial to the administration of justice).

Case Nos. 29, 30 and 41 involve, in the aggregate, additional violations of Rules 1.15(a), 1.15(d) and 8.1(b), as well as violations of Rules 1.15(b) (lawyer shall promptly deliver to client funds to which client is entitled), 1.5(f) (lawyer must provide written statement of basis on which retainer will be earned and statement of fees earned at the time fees drawn from trust account), and 1.16(d) (upon termination, lawyer must surrender papers and property to which client is entitled including unearned retainer funds).

In Board Case No. 5, Fountain violated Rules 3.4(c) (lawyer shall not knowingly disobey obligation under rules of tribunal) and 8.1(b) (lawyer shall not "knowingly fail to respond to lawful demand for information from … a disciplinary authority").

### Aggravating Factors

The Board found that the following aggravating factors exist in this disciplinary matter:

1) Fountain has engaged in a pattern of misconduct involving seventeen separate counts, including (a) filing numerous false Certificates of Compliance with the Supreme Court; and (b) failing to satisfy basic financial obligations relating to the proper maintenance of law practice books and records [ABA Standard for Imposing

*Lawyer Discipline ("ABA Standard")* § 9.22(c)];

2) Fountain's misconduct consists of multiple offenses [*ABA Standard* § 9.22(d)];

3) Fountain's failure to file federal and state income tax returns in 2002 constitutes illegal conduct [*ABA Standard* § 9.22(k)]; and

4) Fountain has substantial experience in the practice of law, having been admitted to the Delaware Bar in 1984 [*ABA Standard* § 9.22(i)].

### Mitigating Factors

The Board found that the following mitigating factors exist in this disciplinary matter:

1) Fountain has no prior disciplinary record [*ABA Standard* § 9.32(a)];

2) Fountain has exhibited remorse and has recognized the wrongfulness of his conduct, as evidenced by (a) his admissions to most of the allegations made and the violations charged in the Petition and (b) his testimony [*ABA Standard* § 9.32(*l*)];

3) Fountain has cooperated, at least in part, with the ODC, [*ABA Standard* § 9.32(e)]. The Board notes, however, that on several occasions, Fountain did not respond to the ODC's inquiries. Indeed, these failures form the basis for two of the Counts in the Petition. Accordingly, this factor is not given as much weight as it would have received if there had been full cooperation;

4) Fountain is of good character [*ABA Standard* § 9.32(g)] and has a history of

serving clients who might not otherwise have legal representation.

### Board's Recommended Discipline

The Board on Professional Responsibility ("Board") has recommended a one-year suspension, with the ability to apply for reinstatement at any time after six months from the date of the suspension, based on "a demonstration that he has made arrangements to resume the practice of law in association with one or more attorneys or in a law firm, but in no case shall ["Fountain"] have responsibility for the financial recordkeeping requirements imposed by Rule 1.15, and shall have no authority to issue checks from operating or escrow accounts." As grounds for this recommendation, the Board primarily relied upon its findings that Fountain's case was distinguishable from *In re Landis*,[3] *In re Bailey*,[4] and *In re Garrett*,[5] in that Fountain did not have a lengthy period of nonpayment of personal taxes. The Board also found Fountain's case distinguishable from *In re Brodoway*,[6] and *In re Froelich*,[7] in that Fountain had not taken "swift remedial efforts" to rectify his misconduct and ... offered only "vague assurances that he will correct the situation in the future." In distinguishing the latter two cases, the Board also found that Fountain's conduct was knowing and involved a "systemic failure" and caused injury to clients.

### ODC's Objections

The ODC submits that this Court's recent decision in *In re Shamers* is the most analogous Delaware disciplinary precedent.[8] The ODC argues that a three-year

**3.** *In re Landis*, 850 A.2d 291 (Del.2004).

**4.** *In re Bailey*, 821 A.2d 851 (Del.2003).

**5.** *In re Garrett*, 835 A.2d 514 (Del.2003).

**6.** *In re Brodoway*, 854 A.2d 1158 (Table) (Del. 2004).

**7.** *In re Froelich*, 838 A.2d 1117 (Del.2003).

**8.** *In re Shamers*, 873 A.2d 1089 (Del.2005).

suspension is appropriate in this matter, based upon: Fountain's ten-year failure to maintain his books and records; his continuing and present failure to maintain his firm's books and records in accordance with the Rules; his continuing and present failure to complete his continuing legal education requirements for 2002 and 2004; his continuing and present failure to safeguard client/third party funds; his continuing and present failure to pay his federal and state income taxes in violation of the Rules; and his longstanding failure to accurately report the status of his books and records to this Court on his Certificates of Compliance for 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, and 2004.

### Standard of Review

■■■ This Court "has an obligation to review the record" in a disciplinary proceeding "independently and determine whether there is substantial evidence to support the Board's factual findings."[9] This Court reviews the Board's conclusions of law de novo.[10] As to the Board's recommendation of an appropriate sanction, this Court has the exclusive authority for disciplining members of the Delaware Bar. Therefore, we have stated that "while the Board's recommendations on the appropriate sanction to be imposed are helpful, they are not binding on this Court."[11] This Court "has wide latitude in determining the form of discipline, and ... will review the recommended sanction to en-

sure that it is appropriate, fair and consistent with ... prior disciplinary decisions."[12]

### Lawyer Sanction Standards

■■■ Lawyer disciplinary sanctions "are not designed to be either punitive or penal."[13] "The objectives of the lawyer disciplinary system [in Delaware] are to protect the public, to protect the administration of justice, to preserve confidence in the legal profession, and to deter other lawyers from similar misconduct."[14] The focus of the lawyer disciplinary system in Delaware is not on the lawyer, but rather on the danger to the public that is ascertainable from the lawyer's record of professional misconduct.[15] To further these objectives and "to promote consistency and predictability in the imposition of disciplinary sanctions," this Court looks for guidance to the four-factor test established by the ABA Standards for Imposing Lawyer Sanctions: the ethical duties violated by the lawyer; the lawyer's mental state; the extent of the actual or potential injury caused by the lawyer's misconduct; and the existence of aggravating and mitigating factors.[16]

### Prior Delaware Disciplinary Cases

■■■ The inherent and exclusive authority for disciplining members of our Bar is vested in this Court.[17] The Court has wide latitude in determining the form of

---

9. *In re Bailey*, 821 A.2d 851, 862 (Del.2003) (citing *In re Reardon*, 759 A.2d 568, 575 (Del. 2000)).

10. *Id.*

11. *Id.* at 866.

12. *Id.*

13. *In re Garrett*, 835 A.2d 514, 515 (Del.2003).

14. *In re Bailey*, 821 A.2d 851, 866 (Del.2003).

15. *In re Hull*, 767 A.2d 197, 201 (Del.2001).

16. *ABA Standards for Imposing Lawyer Sanctions* 8 (1992), *available at* http://www.aban et.org/cpr/regulation/standards_sanctions.pdf. *See also In re Bailey*, 821 A.2d at 866.

17. *See In re Green*, 464 A.2d 881, 885 (Del. 1983).

discipline to be imposed.[18] In imposing sanctions, the Court is guided by its precedents.[19]

 Where there is a finding of continuous failure to file and pay income taxes and failure to maintain law office books and records, the Court has generally found that a suspension of the lawyer is appropriate and usually that sanction is for three years.[20] In reviewing books and records cases, this Court considers whether the conduct was an isolated incident or continued without correction for several years and whether the violations could be readily repeated.[21] We recently conducted an extensive review of this Court's prior precedents involving similar ethical violations.[22]

### *Suspension Appropriate Sanction*

 In *Garrett*, we held that a lawyer's record of "knowing misconduct . . . over a period of several years" involving lawyer books and records, unfiled tax returns, and false Certificates of Compliance warrants suspension from the practice of law, and concluded that based upon the Board's finding of fact and violations of the Rules, a three-year suspension was "consistent with this Court's prior holdings in similar cases."[23] Our decisions in *Landis* and *Bailey* resulted in shorter suspensions, but reflect ameliorating circumstances that are not present in Fountain's case.[24] We have concluded that *Shamers* is the most analogous precedent.

The record in Fountain's case demonstrates a multi-year failure to maintain proper books and records and safeguard client funds; a failure to timely file and pay personal state and federal income taxes; and a ten-year failure to accurately report the status of his books and records on his Certificates of Compliance. The complete disarray of Fountain's financial records is graphically illustrated by numerous overdraft notices to his operating

---

18. *See Matter of a Member of the Bar*, 226 A.2d 705, 707 (Del.1967).

19. *In re Ryan*, 498 A.2d 515 (Del.1985) (suspended for two years for altering a letter from state securities agency that rejected registration of securities offered for sale by employer, with the intent to make employer believe that securities had been accepted for registration); *In re Tos, II*, 576 A.2d 607 (Del.1990) (suspended for one year for failing to provide competent representation, failing to comply with requests of the Supreme Court and Family Court Clerk, and failing to comply with Supreme Court directions); *In re McCann*, 669 A.2d 49 (Del.1995) (suspended for one year for missing filing deadlines, failing to respond to court orders, neglecting to inform client that appeal had been dismissed, identifying self as "nephew" in clients will, submitting falsified evidence to tribunal); *In re Mekler*, 669 A.2d 655 (Del.1995) (suspended for one year for failing to review clients file until five months after petition for review of child support order, submitting falsified documents to court, incorrectly informing clients that continuance was obtained, failing to appear at review, failing to communicate with court); *In re Lassen*, 672 A.2d 988 (Del.1996) (three year suspension for making personal restaurant charges to clients' accounts, disguising charges, making misrepresentations to bankruptcy court, and charging fictitious billable hours to clients); *In re Faraone*, 722 A.2d 1 (Del.1998) (six month suspension and eighteen month probation for misrepresenting material information and failing to correct certain misunderstandings concerning real estate transactions). *See In re Christie*, 574 A.2d 845, 853 (Del.1990).

20. *In re Landis*, 850 A.2d 291, 293 (Del.2004), citing *In re Garrett*, 835 A.2d 514 (Del.2003).

21. *See In re Benson*, 774 A.2d 258 (Del.2001); *In re Landis*, 850 A.2d at 293.

22. *In re Shamers*, 873 A.2d 1089 (Del.2005).

23. *In re Garrett*, 835 A.2d 514, 515 & 515 n. 4 (Del.2003) (collecting cases).

24. *In re Landis*, 850 A.2d 291 (Del.2004); *In re Bailey*, 821 A.2d 851 (Del.2003).

account and to his escrow account. Several of Fountain's clients have been harmed by the co-mingling of funds when Fountain deposited unearned retainer fees directly into his operating account. While the Board believes that Fountain sincerely wants to rectify the situation, it questions Fountain's ability to take the appropriate steps to bring his books and records into compliance. At the time of the hearing, Fountain remained non-compliant. Even the witnesses who testified on Fountain's behalf, including two former judges, acknowledge that Fountain has not demonstrated the capacity to properly administer a private law practice in accordance with the applicable ethical rules.

We have concluded a three-year period of suspension is the appropriate sanction for Fountain, subject to his ability to apply for reinstatement after two years if certain conditions are satisfied. We have also concluded that Fountain's inability to correct his accounting deficiencies raises significant concerns that he will not effectively discharge his obligations under Rules 21 and 23 of the Delaware Lawyers' Rules of Disciplinary Procedure upon his suspension from the practice of law. Therefore, we have concluded that Fountain poses an ongoing risk of harm to clients and former clients unless a Receiver is appointed for the purpose of protecting the interests of those persons. Accordingly, it is hereby ORDERED that Fountain be disciplined as follows:

1) that he be suspended from engaging in the practice of law as a member of the Delaware Bar for a period of three years, commencing on the date of this decision, subject to his ability to apply for reinstatement after two years if the conditions in paragraph 7 are satisfied and Fountain has otherwise demonstrated his rehabilitation;

2) that Fountain be reprimanded publicly;

3) that Fountain discharge his obligations under Rules 21 and 23 of the Delaware Lawyers Rules of Disciplinary Procedure;

4) that during his suspension, Fountain shall not share in any legal fees arising from clients or cases referred by Fountain during the period of suspension to any other attorney or share in any legal fees earned for services by others during such period of suspension;

5) that during his suspension, Fountain shall pay all of the ODC's costs in this proceeding; pay the costs of the LFCP audits; and pay all past and current federal and state income taxes, as well as any taxes owed to the City of Wilmington; and repay to his clients all unearned fees;

6) that Fountain must fully cooperate with the ODC in its efforts to monitor his compliance with the suspension order

7) that if Fountain has complied with all of the other terms and conditions of this opinion, he may petition for reinstatement after two years, based upon a demonstration that he has made arrangements to resume the practice of law in a public capacity or in a private law firm, but not as a solo practitioner and not in any office-sharing arrangement that would amount in substance to a solo practice, and in no case shall Fountain have responsibility for the financial recordkeeping requirements imposed by Rule 1.15, nor shall he have authority to issue checks from operating or escrow accounts, which responsibility shall be assumed by one or more of the other members in good standing of the Delaware Bar with whom Fountain has arranged to engage in the private practice of law;

8) that the ODC's application for leave to petition the Court of Chancery for a Receiver of Fountain's law practice is hereby granted;

9) that this Opinion and Order be disseminated by Disciplinary Counsel in accordance with the Rules of the Board of Professional Responsibility.