911 A.2d 373 (2006)
In the Matter of a Member of the Bar of the Supreme Court of the State of Delaware John J. THOMPSON, Respondent.
No. 378, 2006.
Supreme Court of Delaware.
Submitted: August 29, 2006.
Decided: November 8, 2006.
*374 Matthew F. Boyer, of Connolly Bove Lodge & Hutz, L.L.P., Wilmington, DE, for John J. Thompson.
Michael S. McGinnis, Office of Disciplinary Counsel, Wilmington, DE.
Before STEELE, Chief Justice, JACOBS, and RIDGELY, Justices.
PER CURIAM:
This is an attorney discipline matter involving charges of professional misconduct against John J. Thompson. Thompson has been a member of the Delaware Bar since 1976. The Board of Professional Responsibility found thirteen violations by Thompson of the Delaware Lawyers' Rules of Professional Conduct ("DLRPC"). The violations stem from his failure to comply with the terms of his probation, making false representations to this Court, failure to timely file tax returns, and failure to file memoranda on behalf of a client to the Family Court resulting in dismissal of claims. The Board has recommended a three-year suspension with the possibility of reinstatement in two years.
Thompson does not contest any of the violations, but argues that he should be eligible for reinstatement between six months to one year. He contends that this shorter waiting period would amply protect the public, is warranted by mitigating factors in this case, and is consistent with analogous precedent. The Office of Disciplinary Counsel ("ODC") has responded to each of Thompson's objections and has requested a suspension consistent with the *375 Board's recommendation. We find that the Board gave appropriate weight to the aggravating and mitigating circumstances present and that its recommendation is consistent with the public policy objectives of Delaware's lawyer disciplinary system.
In February 2003, this Court imposed upon Thompson a disciplinary sanction consisting of a public reprimand and a three-year probation for violating DLRPC 1.15(d), 8.4(c), and 8.4(d).[1] The terms of Thompson's probation required him to consult with a practice monitor every month for one year and then quarterly for the remainder of his probation. His practice monitor, Bayard Marin, Esq., was required to provide quarterly reports to the ODC. Thompson violated his probation by failing to provide three monthly bookkeeping affidavits in 2003 and two quarterly bookkeeping affidavits in 2005.
In addition to reporting to his practice monitor, Thompson was also required to complete a 30-month audit. Joseph McCullough, an auditor for the Lawyers' Fund for Client Protection conducted the 30-month audit on October 19, 2005.[2] McCullough found that Thompson had $6,864.59 of unidentified funds in his escrow account.[3] The ODC requested that Thompson respond in writing explaining what steps were taken to identify the funds. Thompson did not respond. As of February 2006, Thompson had $9,857.07 of unidentified funds in his escrow account. Thompson filed false Certificates of Compliance with this Court in 2004 and 2005 stating that his escrow accounts contained no unidentified client funds.
The 30-month audit also uncovered Thompson's failure to timely file his 2002, 2003 and 2004 federal, state and city tax returns. Thompson filed his 2002 federal, state and local tax returns in September 2005. Further, Thompson did not file his 2003 and 2004 federal and state tax returns until 2006. His 2005 tax returns are currently on extension. He falsely represented to this Court in 2004 and 2005 that all of his taxes were timely filed.
In August 2003, Thompson began representing Ms. Darlene Martin in a divorce matter. The Family Court heard Thompson's motion to show cause on behalf of Ms. Martin alleging that her ex-husband failed to pay Ms. Martin her share of the proceeds from the sale of their marital home on July 22, 2005. Thompson was instructed by the Family Court to file post-trial memoranda on several issues in the case. Thompson did not file the submissions by the August 5 deadline and did not respond to the Family Court's status report request. On September 8, the Family Court dismissed all the post-trial issues.
Thompson also did not respond to Ms. Martin's inquiries about the status of her proceedings. In November 2005, Ms. Martin went to Thompson's office and spoke with him. He admitted that he made a mistake and would rectify the problem. On December 16, 2005, having heard nothing from Thompson, Ms. Martin filed a complaint with the ODC. The ODC notified Thompson of the complaint and requested a written response by January 4, 2006. Thompson did not respond. Thompson eventually filed the appropriate *376 papers in Ms. Martin's case and the Family Court entered orders on August 21, 2006 providing Ms. Martin with her share of the equity of her marital home.
At issue in this case is the discipline to be imposed upon Thompson. The Board's recommendation is helpful to the Court, but it is not binding.[4] "The inherent and exclusive authority for disciplining members of our Bar is vested in this Court."[5] When determining an appropriate sanction for lawyer misconduct, this Court "looks to the ABA Standards for Imposing Lawyer Sanctions as a model for determining the appropriate discipline warranted under the circumstances of each case."[6] The ABA's four factors to consider include "(a) the ethical duty violated; (b) the lawyer's mental state; (c) the extent of the actual or potential injury caused by the lawyer's misconduct; and (d) aggravating and mitigating factors."[7]
The Board found that Thompson violated at least three ethical duties for which the ABA recommends suspension.[8] In addition, the Board found that Thompson acted knowingly with regard to each count. Ms. Martin suffered actual injury by Thompson's failure to make timely filings in the Family Court. His failure resulted in substantial delay before she was awarded the equity of her marital home. Thompson also injured the legal system by making false representations on his Certificates of Compliance.
The Board found seven aggravating factors present in this case, including: (1) Thompson's prior disciplinary record including private admonitions in 1985 and 1997 and a public reprimand and three year probation in 2003,[9] (2) Thompson's dishonest conduct by making false statements on his certificates of compliance, (3) Thompson's pattern of misconduct, (4) Thompson's multiple offenses, (5) Thompson's failure to cooperate with the ODC, (6) Thompson's substantial experience in the practice of law, and (7) Thompson's failure to file tax returns for 2002, 2003 and 2004. The Board found four mitigating factors present. They include: (1) remorse, (2) recent cooperation[10] with the ODC, (3) good character,[11] and (4) Thompson's mental disability.
Thompson argues that the mitigating factors in this case outweigh the aggravating factors. Specifically, Thompson contends that the Board did not assign enough weight to his long history of pro bono service and his recent cooperation with the ODC. We disagree. The Board *377 considered both of those factors and assigned them appropriate weight.
Thompson also argues that the Board gave little weight to the diagnosis that Thompson is suffering from a major depressive disorder. The Board chose to give it "some weight" as a personal or emotional problem under ABA Standard 9.32(c), but not as a mental disability as defined by ABA Standard 9.32(i). To qualify as a mental disability under the definition of the ABA Standard there must be:
(1) . . . medical evidence that the respondent is affected by a chemical dependency or mental disability; (2) the chemical or mental disability caused the misconduct; (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.[12]
The Board found that Thompson failed to satisfy the third and fourth prongs of the test. The medical evidence supports this conclusion. Thompson's doctor could not determine how long Thompson had been suffering from depression.[13] In addition, his doctor testified that Thompson had not yet demonstrated a meaningful and sustained period of successful rehabilitation from his depression. The record shows that the Board gave Thompson's condition appropriate weight as a personal or emotional problem consistent with our decision in Hull.[14]
Thompson also argues that the case law in Delaware supports his argument that he should be able to apply for reinstatement after only six months. He relies on In re Landis[15] and In re Mekler.[16]
Thompson's reliance on Landis is misplaced. The key distinction between this case and Landis is that no client suffered harm in Landis. Here, however, Ms. Martin suffered harm by Thompson's failure to timely file memoranda in the Family Court. Additionally, unlike Thompson, Landis was not on probation for misconduct. While Thompson did admit to violating the rules, he failed to respond to ODC requests for almost two years during his probation. Nor did he fully cooperate with the ODC as occurred in Landis.
Mekler is also distinguishable from the facts of this case. In Mekler, the attorney timely filed his tax returns but did not timely pay the amount due.[17] In addition, the attorney represented a client in a proceeding against a former client in violation of DLRPC 1.9(a).[18] Although he was forced to withdraw after the proceedings began, the harm inflicted on the client was less injurious than the damage to Ms. Martin. Unlike Thompson, Mekler fully cooperated with the ODC during the investigation.[19]
This Court's role in "fashioning remedies for attorney misconduct must reflect that our primary responsibility is to the citizens of this State."[20] "The objectives *378 of the lawyer disciplinary system [in Delaware] are to protect the public, to protect the administration of justice, to preserve confidence in the legal profession, and to deter other lawyers from similar misconduct."[21] Thompson's failure to file a tax return is a serious violation and generally results in a lengthy suspension.[22] He failed to file memoranda to the Family Court on behalf of his client and his client suffered as a result. Not only did Thompson fail to respond to various ODC requests for almost two years, but also he has yet to properly balance his escrow account which has contained unidentified funds since at least 2002. All of these violations occurred while on probationary status for earlier violations of the rules.
We have concluded that a three-year period of suspension is the appropriate for Thompson, subject to his ability to apply for reinstatement after two years if he satisfies certain conditions. We also conclude that Thompson's inability to correct his accounting deficiencies requires that a Receiver be appointed for the purpose of protecting his clients and former clients. Accordingly, it is hereby ORDERED that John J. Thompson be disciplined as follows:
(1) Thompson is suspended from engaging in the practice of law for a period of three years, commencing on the date of this decision subject to his right to apply for reinstatement after two years if the conditions in paragraph 9 are satisfied and Thompson has otherwise demonstrated his rehabilitation;
(2) Thompson is reprimanded publicly.
(3) During the suspension, Thompson shall conduct no act directly or indirectly constituting the practice of law, including the sharing or receipt of any legal fees. Thompson shall also be prohibited from having any contact with clients or prospective clients or witnesses or prospective witnesses when acting as a paralegal, legal assistant, or law clerk under the supervision of a member of the Delaware Bar, or otherwise
(4) The Office of Disciplinary Counsel shall file a petition in the Court of Chancery for the appointment of a receiver for the Respondent's law practice.
(5) Thompson shall assist the Receiver in following the directives of Rules 21 and 23 of the Delaware Lawyers' Rules of Disciplinary Procedure.
(6) The Receiver shall make such arrangements as may be necessary to protect the interests of any of Thompson's clients.
(7) Thompson shall pay the costs of these disciplinary proceedings, pursuant to Rule 27 of the Delaware Lawyers' Rules of Disciplinary Procedure, promptly upon presentation of a statement of costs by the ODC.
(8) Thompson shall fully cooperate with the ODC in its efforts to monitor his compliance with this order.
(9) If Thompson has complied with all of the other terms and conditions of this Order, he may petition for reinstatement after two years, pursuant to the requirements set forth in Rule 22 of the Delaware Lawyers' Rules of Disciplinary Procedure.
(10) This Opinion and Order shall be disseminated by the ODC in accordance *379 with Rule 14 of the Delaware Lawyers' Rules of Disciplinary Procedure.
NOTES
[1] In re Thompson, 818 A.2d 151 (Del.2003) (TABLE).
[2] Mr. McCullough began to contact Thompson to schedule the audit in late August, but Thompson did not reply to letters or phone calls until late September.
[3] A Lawyers' Fund for Client Protection audit in 2002 revealed $7,091.00 of unidentified funds in Thompson's escrow account, a basis for Thompson's discipline in 2003.
[4] In re Froelich, 838 A.2d 1117, 1120 (Del. 2003).
[5] In re Shamers, 873 A.2d 1089, 1096 (Del. 2005).
[6] In re Bailey, 821 A.2d 851, 866 (Del.2003).
[7] Id.
[8] The Board found that Thompson violated (i) ABA Standard 4.42(a) by knowingly failing to perform services for a client and causes injury; (ii) ABA Standard 7.2 by knowingly engaging in conduct that is a violation of a duty owed as a professional and causing injury to a client, the public or legal system; and (iii) ABA Standard 8.2 by engaging in similar acts for which he has been disciplined for in the past.
[9] The Board assigned "considerably less weight" to the 1985 private admonition and only "some limited weight" to the 1997 private admonition because of their remoteness in time.
[10] While Thompson has recently cooperated with the ODC, he failed to respond to requests from June 2004 until he answered the Petition for Discipline in April 2006.
[11] Thompson has a lengthy history of representing clients who otherwise may not have legal representation.
[12] In re Hull, 767 A.2d 197, 201 (Del.2001).
[13] "[I]t is not clear yet whether the depression is also long-standing or of more recent origin."
[14] Hull, 767 A.2d at 201.
[15] 850 A.2d 291 (Del.2004).
[16] 689 A.2d 1171 (Del.1996).
[17] Mekler, 689 A.2d at 1173.
[18] Id. at 1175.
[19] Id. at 1176
[20] Hull, 767 A.2d at 201.
[21] Bailey, 821 A.2d at 866.
[22] In re Shamers, 873 A.2d 1089, 1097 (Del. 2005) (citing In re Sanders, 498 A.2d 148 (Del.1985); In re Sandbach, 546 A.2d 345 (Del.1988); In re Ayres, 802 A.2d 266 (Del. 2002); In re Autman, 798 A.2d 1042 (Del. 2002) (Table); In re Hiner, 796 A.2d 654 (Del. 2002) (Table)).