# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| IN THE MATTER OF A | § | |
| MEMBER OF THE BAR OF | § | No. 73, 2016 |
| THE SUPREME COURT OF | § | |
| THE STATE OF DELAWARE: | § | Board on Prof. Responsibility |
| | § | Case No. 112315-B |
| **S. HAROLD LANKENAU,** | § | |
| | § | |
| Respondent. | § | |

Submitted: May 18, 2016
Decided: June 9, 2016

Before **HOLLAND, VAUGHN,** and **SEITZ,** Justices.

Upon Review of the Report of the Board on Professional Responsibility.
**SUSPENSION ORDERED.**

Jeffrey M. Weiner, Esquire, Law Offices of Jeffrey M. Weiner, P.A., Wilmington, Delaware, Attorney for the Respondent.

Jennifer Kate Aaronson, Esquire (*Argued*), Patricia Bartley Schwartz, Esquire, Wilmington, Delaware, Attorneys for the Office of Disciplinary Counsel.

*PER CURIAM*:

This is an attorney disciplinary proceeding. The Office of Disciplinary Counsel ("ODC") filed a Petition alleging multiple ethical violations by S. Harold Lankenau ("Respondent"). A panel of the Board on Professional Responsibility ("Board") found that Respondent engaged in criminal conduct when he misappropriated funds from his employer, over a period of five years, and engaged in dishonest conduct when he lied to his mortgage company and forged his employer's signature.

The Board issued a report ("Report") of its findings and recommendation. The Board recommended that Respondent be suspended for six months and one day. Suspension greater than six months requires proof of rehabilitation prior to reinstatement.[1] Both Respondent and ODC filed objections to the Board's Report. Respondent seeks a suspension of only six months. ODC seeks a suspension of eighteen months. Respondent consented to an interim suspension beginning on February 22, 2016.

We have concluded that Respondent should be suspended from practicing law as a member of the Delaware Bar for a period of eighteen months.

---

[1] Del. Lawyers' R. Disciplinary Proc. 22(a).

## *Counts of the Petition*[2]

The Petition alleges violation of Rules of Professional Conduct Nos. 1.15(a), 1.15(b), 8.4(b), 8.4(c), and 8.4(d). Allegations of misconduct must be established by ODC by clear and convincing evidence.[3]

In Count I, ODC alleged that Respondent violated Rule 1.15(a) by depositing the proceeds from the settlement of a tort claim into his personal bank account when he represented Alverna and Kenneth Warrington.

In Count II, ODC alleged that Respondent violated Rule 1.15(a) by retaining fees personally earned in the *Tomme*, *Orleans Homebuilders*, and *Warrington* cases instead of turning them over to Lundy Law, and failing to keep the funds of a third party separate from his funds.

In Count III, ODC alleged that Respondent violated Rule 1.15(b) by retaining fees personally earned in the *Tomme*, *Orleans Homebuilders*, and *Warrington* cases rather than turning those fees over to Lundy Law.

In Count IV, ODC alleged that Respondent violated Rule 8.4(b) by committing a criminal act by retaining fees personally rather than turning them over to Lundy Law, which acts reflected adversely on Respondent's honesty, trustworthiness, or fitness as a lawyer.

---

[2] This section is taken from the Board's Report.
[3] Del. Lawyers' R. Disciplinary Proc. 15(c); *In re Tos*, 576 A.2d 609, 612 (Del. 1990).

In Count V, ODC alleged that Respondent violated Rule 8.4(c) by engaging in dishonest conduct by retaining the fees personally rather than turning them over to Lundy Law.

In Count VI, ODC alleged that Respondent violated Rule 8.4(c) when he lied to Wells Fargo, Respondent's mortgage company, in connection with his request for a mortgage forbearance agreement.

In Count VII, ODC alleged that Respondent violated Rule 8.4(d) by engaging in conduct prejudicial to the administration of justice when he personally retained the fees in the *Tomme*, *Orleans Homebuilders*, and *Warrington* cases rather than turning them over to Lundy Law.

In Count VIII, ODC alleged that Respondent violated Rule 8.4(d) by engaging in conduct prejudicial to the administration of justice when he lied to Wells Fargo in connection with his request for a mortgage forbearance agreement.

### Board's Factual Findings

The Board found that ODC had proven by clear and convincing evidence the following facts:

> Respondent was admitted to the Delaware Bar in 2007. He is also a member of the Bars in New Jersey and Pennsylvania. He was admitted to the New Jersey Bar in 2003 and Pennsylvania in 2006. He was employed by a Delaware real estate law firm prior to being employed by Lundy Law in October 2008. His employment with Lundy Law was continuous until September 2014. In connection with that employment, Respondent signed a fee sharing

4

agreement setting forth how fees were to be shared with Lundy Law. While Respondent did not specifically recall the agreement, he did execute it.

In addition, Respondent was aware of the type of cases which Lundy Law undertook, and the system and restrictions for processing cases coming into the firm. For instance, he knew that the firm restricted its practice to personal injury cases and did not accept cases which came to the firm shortly before the expiration of the statute of limitations. The fee sharing agreement provided for referral of cases within Lundy Law which it would accept, or refer to outside firms for cases not accepted by Lundy Law. When Respondent accepted cases outside of Lundy Law, he knew he should not have done so.

On July 28, 2009, Respondent filed a property damages subrogation Complaint in United States District Court for the District of Delaware on behalf of Albert Tomme. The case was not filed through Lundy Law, but rather individually by Respondent. In the fall of 2010, the case was settled. Respondent received a fee of $1,111.11. Respondent agreed that the fee earned should have gone to Lundy Law. In addition, the fee did not pass through a Rule 1.15A denominated account. Respondent said he did not refer the case to Lundy Law because it was not a case which Lundy Law would normally have taken. Respondent took the case because he was trying to do a friend a favor.

In January 2010, Respondent was retained to represent a creditor in the Orleans Homebuilders, Inc. case for the purpose of filing a Motion to lift a stay in Bankruptcy Court and was paid a fee of $1,000. Respondent admits that the fee should have gone to Lundy Law. Lundy Law did not do bankruptcy work. Respondent undertook the representation for a friend.

In 2012, Respondent was retained by Alverna and Kenneth Warrington to represent them in a personal injury

5

matter. Respondent was called by an attorney he had worked with shortly after he graduated from law school. The Complaint was filed shortly before the statute of limitations was to expire, without following the Lundy Law procedures for accepting cases. Respondent did not refer the case to Lundy Law after he filed it because he did not want to face Mr. Lundy over the issues. Respondent, however, charged the costs and fees for the Warrington case to an old existing Lundy Law account. He filed suit in the Superior Court under the name of Lundy Law. The case ultimately settled for $19,500. In 2014 Respondent placed the proceeds of settlement in Respondent's personal account and then disbursed them. Respondent's account was not a Rule 1.15A account. Respondent kept fees totaling $4,333.33 which he admits should have gone to Lundy Law. In addition, the filing fees were charged to Lundy Law.

In 2013, Respondent filed a Complaint on behalf of Sherry Moore, charging the filing fees to Lundy Law. The case was eventually dismissed, as Respondent lost contact with the client.

Respondent reported all of the fees earned on his personal income tax returns.

Respondent testified that in 2013 he was overwhelmed with bills. His son was in private school, he was overwhelmed with work, and he fell behind in his mortgage.

On August 7, 2013, Respondent wrote to his mortgage company Wells Fargo, seeking a mortgage forbearance agreement. In that letter he falsely indicated that he had been laid off from his job, but had recently been re-hired. On August 7, 2013, he executed a Homeowner Financial Assistance Form ("HFA Form"). In the body of the HFA Form, Respondent falsely asserted that he had a loss of employment. On Page 5, Respondent falsely certified that the events identified on Page 2 of the

HFA Form were correct. The facts on Page 2 of the HFA Form were false since Respondent had not suffered a loss of employment. In addition, the facts relating to his layoff set out in Joint Exhibit 16 were also false, as were the statements as set out in the Hardship Affidavit Form. Respondent acknowledges that he lied to Wells Fargo. Respondent also forged Mr. Lundy's signature to a letter Respondent sent to Wells Fargo and, using Mr. Lundy's name, announced "with great pleasure" a job offer to Respondent. This occurred while when Respondent was already fully employed at Lundy Law earning a salary of $100,000-$125,000 per year.

A Complaint was filed with ODC by Mr. Lundy. He confronted Respondent, who admitted to everything he did and reimbursed the firm $900 for costs that he improperly charged to the firm. Lundy Law has not asked for the fees Respondent collected in the three cases. Respondent kept fees in the amount of $6,444.44. Respondent explained that the events relating to clients came about as requests from friends. While he took the fees and charged costs to Lundy Law, Respondent testified that he was not trying to start up a new firm or steal clients from Lundy Law. Respondent testified he did not have any reason for needing funds. Respondent is currently working for a law firm in Pennsylvania.

Following the discovery of Respondent's misrepresentations, Respondent wrote to Wells Fargo to admit his false statements. Wells Fargo acknowledged Respondent's misrepresentations in a January 5, 2015 letter. Since January 2015, Respondent's mortgage has been current, and he has not had any further communication with Wells Fargo.

Respondent has been treating with a psychologist and psychiatrist. As noted in their reports, Respondent's actions arise out of his childhood and his inability to confront personal problems. This condition, while it impacted his practice and contributed to his violation of

his duties as a lawyer, has not resulted in any client loss. His health care providers indicated that, in their view, from a mental health perspective Respondent is fully able to practice law.[4]

### *Ethical Violations Committed*

Respondent admitted all the operative facts, except the allegation of a violation of 11 *Del. C.* § 841(a). Based on its evidentiary findings, the Board found that ODC had established the violations alleged in Counts I–III, and VI–VIII by clear and convincing evidence. With respect to Count IV, the Board found by clear and convincing evidence that Respondent's conduct, when he kept the funds admittedly belonging to Lundy Law, constituted criminal conduct which reflected adversely on Respondent's trustworthiness and honesty as a lawyer. The Board believed this to be a close question, but found as a fact that Respondent knew the fees did not belong to him at the time he kept them. During the proceedings before this Court, Respondent stipulated that the evidence also established the violations alleged in Counts IV and V by clear and convincing evidence.

---

[4] Internal citations to the record omitted.

8

*Board's Sanctions Analysis*[5]

In determining the appropriate sanction for lawyer misconduct, Delaware follows the American Bar Association Standards for Imposing Lawyer Sanctions ("ABA Standard(s)"):

> The ABA framework consists of four key factors [to be considered by the Court]: (a) the ethical duty violated; (b) the lawyer's mental state; (c) the extent of the actual or potential injury caused by the lawyer's misconduct; and (d) aggravating and mitigating factors.[6]

(a) The Ethical Duties Violated

The Board found that Respondent violated Rules 1.15(a), 1.15(b), 8.4(c), and 8.4(d) as noted above. Respondent stipulated in this Court that the Board's factual findings also demonstrated that he violated Rule 8.4(b).

(b) The Lawyer's Mental State

ODC argued that the appropriate mental state was that Respondent acted knowingly. The ABA Standards define "Knowledge" and "Negligence" as follows:

> "Knowledge" is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result.

> "Negligence" is the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will

---

[5] This section is taken from the Board's Report.
[6] *In re Goldstein*, 990 A.2d 404, 408 (Del. 2010); *In re Doughty*, 832 A.2d 724, 736 (Del. 2003); *see also In re McCann*, 894 A.2d 1087, 1088 (Del. 2005); *In re Fountain*, 878 A.2d 1167, 1173 (Del. 2005); *In re Steiner*, 817 A.2d 793, 793 (Del. 2003).

follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation.[7]

The Board found that Respondent acted knowingly with respect to all counts of the Petition. While Respondent testified that he had reasons for his conduct, he knew that the acts of representing clients outside of Lundy Law and retaining the fees associated with those representations were in violation of Respondent's duties to his employer. Respondent also admitted that he deposited and retained, in his personal account, the settlement in the *Warrington* case. In addition, Respondent knew that he was being dishonest with Wells Fargo about his employment status. Respondent also knew that forging Mr. Lundy's signature to a purported letter re-hiring Respondent was wrong.

(c) Actual Or Potential Injury

There was no testimony that any of the clients were actually injured by Respondent's actions, and none of the parties involved, other than Mr. Lundy, complained about what Respondent did. Lundy Law was actually injured by Respondent's actions. While Lundy Law was reimbursed for the costs charged, Respondent did not pay Lundy Law the fees he received; a portion of which would have gone to Lundy Law.[8] Respondent did not return the fees, and Mr. Lundy did

---

[7] ABA Standards for Imposing Lawyer Sanctions, III. Black Letter Rules (1992).
[8] Respondent paid the fees to Lundy Law after the Board hearing.

10

not ask for them. Whether Mr. Lundy asked for the return of the fees is irrelevant to the question of whether Lundy Law sustained an actual injury. In addition, there was potential injury to the clients by Respondent's depositing the funds into his personal account, and potential injury to Wells Fargo if they decided to forbear action on Respondent's mortgage and incurred a loss.

(d) Aggravating And Mitigating Circumstance

After misconduct has been established, aggravating and mitigating circumstances are considered to decide what sanctions to impose.[9] "Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed."[10]

The Board found the following aggravating factors:

- Substantial Experience In The Practice Of Law. ODC argues that Respondent has substantial experience. Respondent was admitted to the New Jersey Bar in 2003, the Pennsylvania Bar in 2006, and the Delaware Bar in 2007. Respondent was first admitted to the Bar in 2003. The time period one must practice in order to have substantial experience has not been definitely defined. The Board finds that Respondent has experience enough for the circumstances alleged in this case. ABA Standard 9.22(i).

- Pattern Of Misconduct. Respondent repeated his misconduct by representing multiple clients,

---

[9] *In re Bailey*, 821 A.2d 851, 866 (Del. 2003); *In re Goldstein*, 990 A.2d at 408.
[10] ABA Standards for Imposing Lawyer Sanctions, 9.21; *In re Steiner*, 817 A.2d at 796.

11

keeping fees, and charging costs. ABA Standard 9.22(c).

- Multiple Offenses. There were multiple acts in that [Respondent] took fees, used a non-Rule 15A Account, forged his employer's signature, and lied to [his] mortgage company. ABA Standard 9.22(d).

- Dishonest Or Selfish Motive. ODC argues dishonest motive as an aggravating factor. The Board found that there was a dishonest motive. Respondent took fees that belonged to his law firm and charged costs as well, and incorrectly represented his employment status to his mortgage company. While Respondent testified that the clients were represented as favors to others and the misrepresentations to the bank were made because he felt he was in dire straits, the acts taken were dishonest. In addition, Respondent admitted that his actions were dishonest. ABA Standard 9.22(b) [sic].[11]

Mitigating factors "are any considerations or factors that may justify a reduction in the degree of discipline to be imposed."[12] Respondent presented the following mitigating factors:

(1) Absence Of Prior Disciplinary Record: This is Respondent's first time before the Board on Professional Responsibility. ABA Standard 9.32(a).

(2) Cooperative Attitude Toward Proceedings: Although Respondent did not self-report these violations, he was professional and cooperative throughout these proceedings. ABA Standard 9.32(e).

---

[11] Internal citations to the record omitted.
[12] ABA Standards for Imposing Lawyer Sanctions, 9.31.

12

(3) Character And Reputation: Respondent, while not presenting any evidence of his character and reputation, takes the position that since ODC did not present adverse evidence, then it is presumed there is not any adverse evidence. Because no evidence was presented, the Board does not find that this is a mitigating factor. ABA Standard 9.32(g).

(4) Inexperience In The Practice Of Law: Respondent asserts that he did not really begin the practice of law until 2004 after his clerkship in New Jersey. The events in question ranged from 2009 to 2013, less than a 10-year span. Given the events admitted by Respondent, he had sufficient experience to know his actions were wrong. ABA Standard 9.32(f).

(5) Remorse: Respondent is clearly remorseful about his actions. ABA Standard 9.32(f).

(6) Personal Or Emotional Problem: It seems clear, based upon the reports of Drs. Rappaport and Kaye, that the problems Respondent found himself confronting were exacerbated by his abusive childhood and his reluctance, if not inability, to confront personal problems. He had an overwhelming desire to please those he was involved with on a business basis. ABA Standard 9.32(h).[13]

The Board found that the mitigating factors do not outweigh the aggravating factors or the duty a lawyer owes to others in conducting his affairs. The Board found that the presumptive sanction is suspension.[14]

---

[13] Internal citations to the record omitted.
[14] ABA Standards for Imposing Lawyer Sanctions, 5.12.

### Board's Recommended Sanction

The Board recommends that Respondent be suspended for six months and one day, and pay the costs of this disciplinary proceeding. The Board's recommendation of an appropriate sanction assists the Court, but it is not binding.[15] This Court has the "exclusive authority for disciplining members of the Delaware Bar."[16] The Court "has wide latitude in determining the form of discipline, and [it] will review the recommended sanction to ensure that it is appropriate, fair and consistent with . . . prior disciplinary decisions."[17]

### Suspension For Eighteen Months

All lawyers take an oath upon their admission to the Delaware Bar. The oath is a solemn promise of competent and ethical conduct, which dates back to the beginnings of the legal profession. It is a venerable "tradition in both form and substance." Honesty has been a central requirement in the attorney's oath since the era of Justinian.[18]

When deciding upon the appropriate sanction, this Court must consider that "[t]he primary purpose of disciplinary proceedings is to protect the public; to foster public confidence in the Bar; to preserve the integrity of the profession; and to deter

---

[15] *In re McCann*, 894 A.2d at 1088; *In re Bailey*, 821 A.2d at 877.
[16] *In re Katz*, 981 A.2d 1133, 1149 (Del. 2009).
[17] *Id.*; *In re Tonwe*, 929 A.2d 774, 777 (Del. 2007); *In re Steiner*, 817 A.2d at 796.
[18] *In re Davis*, 43 A.3d 856 (Del. 2012).

other lawyers from similar misconduct."[19]  The lawyer discipline system was not designed to be either punitive or penal in nature.[20]

We have carefully considered the ethical violations, the nature of the violations, the aggravating and mitigating factors, and all of the facts and circumstances of this case.  Respondent engaged in criminal conduct when he misappropriated funds from his employer, over a period of five years, and engaged in dishonest conduct when he lied to his mortgage company and forged his employer's signature.  This Court's precedent supports the imposition of a one-year suspension where the misconduct is misappropriation of firm funds.[21]  Accordingly, Respondent should receive a suspension of at least one year for the sole misconduct of misappropriating firm funds.  Respondent's dishonest conduct in connection with his mortgage company, standing alone, also merits the sanction of suspension.[22]  Accordingly, ODC submits that Respondent's dishonest conduct merits a length of

---

[19] *In re Figliola*, 652 A.2d 1071, 1076 (Del. 1995).

[20] *In re Rich*, 559 A.2d 1251, 1257 (Del. 1989).

[21] *See In re Vanderslice*, 55 A.3d 322, 327 (Del. 2012) (suspending a lawyer for one year where lawyer misappropriated firm funds eight times in a ten-month period); *see also In re Staropoli*, 2005 WL 277911 (Del. Jan. 10, 2005) (suspending a lawyer for one year where lawyer misappropriated firm funds one time).

[22] *See In re Favata*, 119 A.3d 1283 (Del. 2015) (suspending a lawyer for six months and one day for making false statements to a court during a trial); *In re Bria*, 86 A.3d 1118 (Del. 2014) (suspending a lawyer for six months and one day where lawyer made misrepresentations in his annual registration with the Court regarding the status of his tax obligations); *In re Amberly*, 996 A.2d 793 (Del. 2010) (rejecting the Board's recommendation of a 30-day suspension and imposing a six month suspension on lawyer who made false statements to the tribunal and disciplinary counsel).

suspension of at least six months, in addition to his suspension for misappropriation of firm funds. We agree.

Accordingly, it is hereby ordered that S. Harold Lankenau is suspended from engaging in the practice of law as a member of the Delaware Bar for a period of eighteen months, commencing February 22, 2016. It is further ordered that he pay the costs of this proceeding. ODC is directed to disseminate this opinion in accordance with the Rules of the Board on Professional Responsibility.